# POLLARD *v.* UNITED STATES.

No. 38.   Argued December 3, 1956.—Decided February 25, 1957.

*Bennett Boskey,* acting under appointment by the Court, 350 U. S. 980, argued the cause and filed a brief for petitioner.

*Philip Elman* argued the cause for the United States. On the brief were *Solicitor General Rankin, Assistant Attorney General Olney, Ralph S. Spritzer, Beatrice Rosenberg* and *Robert G. Maysack.*

MR. JUSTICE REED delivered the opinion of the Court.

This case concerns the validity of a sentence imposed on petitioner in September 1954. On September 8, 1952, petitioner pleaded guilty in the United States District Court for the District of Minnesota to an information charging him with the unlawful taking and embezzlement of a United States Treasury check in violation of 18 U. S. C. § 1702. The district judge deferred imposition of sentence pending presentence investigation. On October 3, 1952, petitioner appeared before the trial judge at 10 a. m. for sentencing. He was then serving a sentence in a Minnesota state prison, from which he was eligible for parole the following month. The judge stated that the probation report showed that petitioner had taken an active interest in the Alcoholics Anonymous organization in prison, and petitioner told him that he contemplated continuing that interest when he was released from the state prison. The judge added that he was impressed by the fact that petitioner, who had stolen the check after a two-week drinking spree, had revealed what he had done to an officer of Alcoholics Anonymous and to the FBI without any effort to minimize the offense. He advised petitioner to join Alcoholics Anonymous immediately on his release from the state prison. He then said:

". . . if you want to revert to drinking, you will be back here again because you will commit some federal offense, and I won't be talking to you this way if you are ever before me again.

> "So, good luck to you and I hope the parole board will give you an opportunity.
> "That is all."

The judge then turned to other business.

It is clear that no explicit reference to petitioner's sentence had been made during this colloquy. But before the court adjourned at 10:30 a. m., when petitioner apparently had left the courtroom, an assistant United States District Attorney handling the matter said:

> "Going back to the matter of Thomas E. Pollard who appeared this morning—I didn't quite understand that clearly—is there to be a probationary period after his release from Stillwater, or any type of sentencing?
> "The Court: It is to commence at the expiration of sentencing at Stillwater.
> "Mr. Hachey: Probation to commence after expiration of his sentencing at Stillwater—for how long?
> "The Court: Three years."

A judgment and order of probation was then entered suspending imposition of sentence and placing petitioner on probation for that term. The Government concedes that the judgment and order was invalid because of petitioner's absence from the courtroom when probation was imposed. Fed. Rules Crim. Proc., 43.

Petitioner did not receive a copy of this order, despite a direction of the court, but learned of the probation from state prison officials the following month when he was paroled. On his release he began reporting to the federal probation officer. Nearly two years later, on September 1, 1954, the trial judge issued a bench warrant for petitioner's arrest on the basis of the probation officer's report that petitioner had violated the terms of his probation. Petitioner was arrested and brought before the

court on September 21, 1954.  After waiver of counsel by petitioner, the following occurred at the hearing:

> "The Court: What I am going to do in your case, because of the record, is to sentence you in the first instance: It's the judgment of the Court that you be confined in an institution to be selected by the Attorney General of the United States for a period of two years.  That's all.
>
> "Mr. Evarts [Asst. U. S. Attorney]: Now, Your Honor, as you recall, the record shows that he was, sentence was imposed on October 3, 1952, and I would suggest to the Court that an Order be made setting aside the judgment and commitment that was entered at that time so that the record will now truly reflect the status of the events.
>
> "The Court: All right."

A formal judgment and commitment was then entered, sentencing petitioner to two years' imprisonment and setting aside the judgment and order of probation entered on October 3, 1952.

Petitioner's motion to vacate this sentence under 28 U. S. C. § 2255 was based upon a misapprehension of the basis for the sentence of 1954.  He contended that, since his 1952 probation sentence was invalid, his 1954 prison sentence was also invalid because it was for probation violation.  Actually, of course, it was punishment for the embezzlement.  The District Court denied the motion on the ground that "[Petitioner] was initially sentenced upon September 21, 1954, and the files and records in the case conclusively show that said judgment was within the jurisdiction of the court and the sentence imposed was valid and in accordance with law."  Petitioner filed a notice of appeal and a motion for leave to proceed *in forma pauperis*.  The District Court denied this motion "in all respects."  Petitioner then filed a motion for leave

to appeal *in forma pauperis* in the Court of Appeals for the Eighth Circuit. After examination of the record in the District Court, the Court of Appeals denied this motion without opinion. This Court granted leave to proceed *in forma pauperis,* and, deeming the issues as to the validity of the 1954 sentence of importance in the proper administration of the criminal law, granted certiorari. 350 U. S. 965. We also appointed counsel for petitioner. 350 U. S. 980.

Petitioner was released from federal prison in March 1956, after his petition for certiorari had been granted. He relies on *United States* v. *Morgan,* 346 U. S. 502, 512–513, and *Fiswick* v. *United States,* 329 U. S. 211, 220–223, as meeting the question of mootness that this fact suggests. Those cases are not entirely on all fours with this one, since petitioner is challenging the legality not of any determination of guilt, but instead of the sentence imposed. But those cases recognize that convictions may entail collateral legal disadvantages in the future. Appeals from convictions are allowed only after sentences. Fed. Rules Crim. Proc., 37. The determination of guilt and the sentence are essential for imprisonment. We think that petitioner's reference to the above cases sufficiently satisfies the requirement that review in this Court will be allowed only where its judgment will have some material effect. Cf. *St. Pierre* v. *United States,* 319 U. S. 41. The possibility of consequences collateral to the imposition of sentence is sufficiently substantial to justify our dealing with the merits.[1]

The petition for certiorari, *pro se,* sought reversal of the order of the Court of Appeals denying petitioner's motion for appeal *in forma pauperis* and also release from his then incarceration.[2] Petitioner contended that the 1954

---

[1] Cf. *Pino* v. *Landon,* 349 U. S. 901, reversing 215 F. 2d 237.

[2] Such an order is reviewable on certiorari. *Wells* v. *United States,* 318 U. S. 257.

sentence was unconstitutional because it was imposed for violation of the invalid probation order.

Petitioner now, in his brief, claims that the trial judge determined on October 3, 1952, that no imprisonment and no probation should be imposed, and that consequently the imposition of sentence in September 1954 violated the Double Jeopardy Clause of the Fifth Amendment. He claims alternatively that the imposition of sentence in September 1954 in the circumstances under which it took place constituted a serious departure from proper standards of criminal law administration and violated his rights to a speedy trial under the Sixth Amendment and to due process of law under the Fifth Amendment.[3] The record now before us adequately states the facts for a final determination of the basic issues. Since the Court of Appeals' denial of petitioner's appeal involved an adjudication of the merits, *i. e.,* that there was no adequate basis for allowance of appeal *in forma pauperis,* we think the validity of the 1954 sentence for embezzlement should now be decided. And we conclude that it is proper that we deal with the questions as to legality of the 1954 sentence that petitioner now raises, although, had petitioner been represented by counsel in the courts below and upon his petition for certiorari, we might well have considered those questions neither preserved below nor raised in the petition. Cf. *Price* v. *Johnston,* 334 U. S. 266, 292.

I. The contention that the Double Jeopardy Clause of the Fifth Amendment forbids the 1954 sentence may be shortly answered. It depends upon the assertion that the trial court determined in 1952 that petitioner "should not be subject to imprisonment or probation" on his plea of guilty to embezzlement. Without such a determination, there could not be double jeopardy. The transcript

---

[3] No question is raised as to the length of the 1954 sentence. Cf. *Roberts* v. *United States,* 320 U. S. 264.

of evidence, all pertinent parts of which are quoted in the first part of this opinion, shows no such determination. The petitioner cites no words upon which he relies. The only sentence that was entered at the 1952 hearing was the one of probation, admittedly invalid because of petitioner's absence.[4]

It is clear to us, too, that the District Court did not by implication intend to acquit or dismiss the defendant. Within the morning session of court, when his failure to make explicit the sentence was called to his attention, the judge directed entry of the order suspending sentence and instituting probation. There is no occasion here for distinguishing between an oral pronouncement of sentence and its entry on the records of the court. Cf. *Spriggs* v. *United States*, 225 F. 2d 865, 868. Nor does the situation call for a determination of the correctness of petitioner's assertion that a federal judge has power, under a statute without minimum penalties,[5] to release or discharge an accused absolutely after conviction or plea of guilty without sentence, suspension of sentence or grant of probation.[6] It is unfortunate for inadvertencies to lead to confusion in criminal trials, but such misunderstanding as petitioner may have drawn from the occurrences at the 1952 sentence is not a basis for vacating the later sentence. The mishap of the prisoner's absence when the first sentence was pronounced cannot be a basis for vacating the 1954 sentence here

---

[4] "In a criminal case final judgment means sentence; and a void order purporting permanently to suspend sentence is neither a final nor a valid judgment." *Miller* v. *Aderhold*, 288 U. S. 206, 210–211. Cf. *Korematsu* v. *United States*, 319 U. S. 432, 434; *Hill* v. *Wampler*, 298 U. S. 460, 464; *Berman* v. *United States*, 302 U. S. 211, 212.

[5] The statute upon which the information was based reads: ". . . [an embezzler] shall be fined not more than $2,000 or imprisoned not more than five years, or both." 18 U. S. C. § 1702.

[6] See 18 U. S. C. § 3651; Fed. Rules Crim. Proc., 32 (a), (b), (e).

involved. If the probation sentence had been valid, petitioner on its violation would have been subject to the sentence actually imposed in 1954. 18 U. S. C. § 3653; *Roberts* v. *United States,* 320 U. S. 264, 268.

II. Petitioner's other contentions relate to violations of constitutional rights of speedy trial and due process, and significant departure from proper standards of criminal law administration. It is not disputed that a court has power to enter sentence at a succeeding term where a void sentence had been previously imposed. *Miller* v. *Aderhold,* 288 U. S. 206; cf. *Bozza* v. *United States,* 330 U. S. 160, 166. To hold otherwise would allow the guilty to escape punishment through a legal accident.

Petitioner argues that the 1954 sentence violated his right under the Sixth Amendment of the Constitution to a "speedy" trial.[7] He takes this position on the assumption that the case remained, as we have held above, uncompleted after the 1952 trial. We will assume *arguendo* that sentence is part of the trial for purposes of the Sixth Amendment. The time for sentence is of course not at the will of the judge. Rule 32 (a) of the Federal Rules of Criminal Procedure requires the imposition of sentence "without unreasonable delay."

Whether delay in completing a prosecution such as here occurred amounts to an unconstitutional deprivation of rights depends upon the circumstances. See, *e. g., Beavers* v. *Haubert,* 198 U. S. 77, 87; *Frankel* v. *Woodrough,* 7 F. 2d 796, 798. The delay must not be purposeful or oppressive. It was not here. It was accidental and was promptly remedied when discovered.

---

[7] Fed. Rules Crim. Proc., 48 (b), provides for enforcement of this right: "If there is unnecessary delay in presenting the charge to a grand jury or in filing an information against a defendant who has been held to answer to the district court, or if there is unnecessary delay in bringing a defendant to trial, the court may dismiss the indictment, information or complaint."

Nothing in the record indicates any delay in sentencing after discovery of the 1952 error. From the issuance of the warrant in September 1954 for the violation of probation, the normal inference would be that the error was still unknown to the court, although petitioner states he had known of it since November 1952.[8] We do not have in this case circumstances akin to those in *United States v. Provoo,* 17 F. R. D. 183, 201, aff'd mem. 350 U. S. 857, where Judge Thomsen found the delay "caused by the deliberate act of the government" which the accused attempted to correct. The same situation existed in *United States v. McWilliams,* 82 U. S. App. D. C. 259, 163 F. 2d 695, where the Government's failure to be ready for trial persisted for nearly two years despite defendant's motions for trial. In these circumstances, we do not view the lapse of time before correction of the error as a violation of the Sixth Amendment or of Rule 32 (a). Error in the course of a prosecution resulting in conviction calls for the correction of the error, not the release of the accused. *Dowd v. Cook,* 340 U. S. 206, 210.

Petitioner contends also that, in sentencing him for the embezzlement in 1954, the judge disregarded the standards prescribed for such a proceeding. He points out that the transcript of evidence shows that the prosecuting attorney in open court, instead of the judge, inquired of petitioner as to waiver of his right to counsel. He suggests that this violates Rule 44 of the Federal Rules of Criminal Procedure.[9] On the same transcript authority,

---

[8] We note that petitioner made no motion to secure a prompt proper sentence, often considered important in questions involving the Speedy Trial Clause. See cases cited in *Petition of Provoo,* 17 F. R. D. 183.

[9] "If the defendant appears in court without counsel, the court shall advise him of his right to counsel and assign counsel to represent him at every stage of the proceeding unless he elects to proceed without counsel or is able to obtain counsel."

he makes the suggestion that Rules 32 (a) and 37 (a)(2) were disregarded concerning opportunity "to make a statement in his own behalf and to present any information in mitigation of punishment" and advice to a defendant "not represented by counsel . . . of his right to appeal." Petitioner argues that these irregularities constitute a denial of due process. While we do not impose on persons unlearned in the law the same high standards of the legal art that we might place on the members of the legal profession, we think that these issues are too far afield from the questions that petitioner raised in the courts below and in his petition for certiorari for them properly to be before us. In any case, the formal commitment papers signed by the judge show that these steps, except that of advising petitioner of his right to appeal, were actually taken. We are not willing to conclude from the transcript of evidence covering only such notes as were "taken at the above time and place" that the above purely routine statutory requirements were not followed.

This leaves unresolved the question whether the Court of Appeals' denial of leave to appeal was proper. Since we conclude that petitioner must lose on the merits, nothing could be gained by a remand to the Court of Appeals even if we should be of the opinion that the Court of Appeals erred in denying leave to appeal.

*Affirmed.*

MR. CHIEF JUSTICE WARREN, with whom MR. JUSTICE BLACK, MR. JUSTICE DOUGLAS, and MR. JUSTICE BRENNAN join, dissenting.

Our duty to supervise the administration of justice in the federal courts calls for a reversal here because of disregard shown for the procedural rights of petitioner— rights with which the law surrounds every person charged with crime.

Our law, based upon centuries of tragic human experience, requires that before a man can be sent to a penitentiary, he is entitled to a speedy trial, to be present in court at every step of the proceedings, at all times to be represented by counsel, or to speak in his own behalf, and to be informed in open court of every action taken against him until he is lawfully sentenced. These are not mere ceremonials to be neglected at will in the interests of a crowded calendar or other expediencies. They are basic rights. They bulk large in the totality of procedural rights guaranteed to a person accused of crime. Here, in the case of an impecunious defendant, who was summarily rushed through the court mill without benefit of counsel, all of them, in some degree, were denied him.

The petitioner was not a dangerous criminal. His trouble, as the court recognized, was intemperance. During the course of a long drinking spree, he became involved with both the state and federal authorities. As soon as he became sober enough to realize the consequences of his actions, he made a full disclosure to one of the officers of Alcoholics Anonymous and to the Federal Bureau of Investigation.

He was sentenced to a state penitentiary. He was also charged by the Federal Government with unlawfully opening a letter and extracting a check which he cashed. The case was not pressed until petitioner was about to be discharged from the state penitentiary.[1] Without counsel, he pleaded guilty. He was then

---

[1] The alleged offense occurred on or about May 21, 1951. A complaint was signed the following July. Nothing further ensued in the case until September 8, 1952. On that date the United States Attorney filed an information and petitioner entered his plea of guilty.

brought into court to receive sentence. The colloquy between him and the court concluded as follows:

> "The Court: You ought to know the misery and the grief and the sorrow and the horror of what continued drinking on your part will bring to you.
>
> "If I might suggest to you, and I am giving you gratuitous advice but it is the result of observation and experience—it is my view that when you get out you should immediately join the Alcoholics Anonymous organization—not wait a week or two weeks or three weeks—but have that your first mission after you contact your family, and do what they tell you to do and do it immediately and do it diligently and faithfully, carry out every obligation that they impose upon you. With your background and with your ability I think that you can win this fight.
>
> "If you don't do those things, and if you want to revert to drinking, you will be back here again because you will commit some federal offense, and I won't be talking to you this way if you are ever before me again.
>
> "So, good luck to you and I hope the parole board will give you an opportunity.
>
> "That is all.
>
> "The Defendant: Thank you very much, sir."

Petitioner's wife, a close personal friend and the two state custodial officers who were present at the hearing concluded, as would anyone, that the kindly and understanding language of the judge ended the matter and that additional punishment was not to be imposed. Petitioner was returned to the state penitentiary. Later in the day, after an inquiry by the prosecuting attorney as to the disposition of the case, the judge casually said,

"Three years [probation]."[2] Petitioner was absent when this occurred.[3] Notice of this action was not even communicated to him. A month or so later, as he was being released from the state prison, the officials advised him that he must report to the federal probation officer. Naturally, he complied. But he immediately tried to discover, through the probation officer, how and why he was subject to probation. The officer succeeded in convincing him that the "sentence" was legal. Again, a year later, petitioner requested his probation officer to investigate. The officer discovered the truth of petitioner's assertions. Though he recognized the irregularity of the proceedings, he suggested to petitioner that it would not be wise to pursue the matter—that further complications might develop.

In September 1954, nearly two years after his first appearance before the court for sentencing, petitioner lapsed in the fight against excessive drinking. Reported as a probation violator, he was again brought into federal court. His case was disposed of in the most summary style. The Assistant United States Attorney first obtained the defendant's statement waiving right to counsel. He was not advised by the court, as required by law,

---

[2] "The Court: Is there anything else, Mr. Hachey [Prosecuting Attorney]?

"Mr. Hachey: Going back to the matter of Thomas E. Pollard who appeared this morning—I didn't quite understand that clearly—is there to be a probationary period after his release from Stillwater, or any type of sentencing?

"The Court: It is to commence at the expiration of sentencing at Stillwater.

"Mr. Hachey: Probation to commence after expiration of his sentencing at Stillwater—for how long?

"The Court: Three years."

[3] The Government concedes that the probation sentence was completely invalid because it was imposed in petitioner's absence. Fed. Rules Crim. Proc., 43.

of his right to counsel and to the appointment of counsel if desired. Fed. Rules Crim. Proc., 44. The judge, but not petitioner, had apparently been apprised beforehand of the illegality of the October 3, 1952, sentence.

> "The Court: What I am going to do in your case, because of the record, is to sentence you in the first instance: It's the judgment of the Court that you be confined in an institution to be selected by the Attorney General of the United States for a period of two years. That's all.
>
> "Mr. Evarts [Prosecuting Attorney]: Now, Your Honor, as you recall, the record shows that he was, sentence was imposed on October 3, 1952, and I would suggest to the Court that an Order be made setting aside the judgment and commitment that was entered at that time so that the record will now truly reflect the status of the events.
>
> "The Court: All right."

In this Court the Government concedes the total invalidity of the "sentence" of October 3, 1952, and contends that these events of September 21, 1954, are to be treated as the first and only sentence imposed on the defendant for the crime of which he had pleaded guilty in 1952. But it too has infirmities. It cannot be said that this long delayed sentencing hearing comports with the requirements of the Federal Rules of Criminal Procedure. As already stated, petitioner was not represented by counsel. There was no attempt to comply with Rule 37 (a)(2), which provides that: "When a court after trial imposes sentence upon a defendant not represented by counsel, the defendant shall be advised of his right to appeal . . . ." Furthermore, Rule 32 (a) contains a mandatory requirement: "Before imposing sentence the court shall afford the defendant an opportunity to make

a statement in his own behalf and to present any information in mitigation of punishment." No opportunity was afforded the defendant to say a word in mitigation or extenuation of his offense.[4]

Petitioner also questions the power of the trial court to sentence him so long after arraignment. The Sixth Amendment guarantees to persons accused of crimes in a federal court that they shall receive a "speedy and public trial." It has never been held that the sentence is not part of the "trial." But it is not necessary to decide this issue on constitutional grounds. The principle has been implemented by the Federal Rules of Criminal Procedure.

Rule 32 (a) declares unequivocally that: "Sentence shall be imposed without unreasonable delay." The majority holds that this two-year delay is not unreasonable because it was "accidental" and was "promptly remedied when discovered." There is nothing in the record to warrant either of these conclusions. Both the court and the prosecuting attorney were put on notice of the fatal defect of the abortive sentence on the day it was imposed. No steps were taken to remedy the defect. Petitioner declared that he twice initiated investigation of the legality of his sentence. The probation officer obviously checked with someone long before petitioner was brought to court for what is now called his "first" sentence. We cannot simply assume that the facts did not come to the attention of any responsible person.

This proceeding was initiated as a motion to vacate sentence under 28 U. S. C. § 2255. The district judge refused to accord petitioner a hearing and, considering only the motion and the files and records in the court,

---

[4] The stereotyped recitals in the commitment papers, referred to by the majority, are wholly inconsistent with the verbatim transcript of the proceedings, which is clearly a complete record of all that actually occurred while petitioner was before the court.

denied relief. Then, in spite of the infirmities in the case revealed by these documents, leave to appeal *in forma pauperis* was denied. The Court of Appeals for the Eighth Circuit affirmed this action, but we granted certiorari and appointed counsel to represent petitioner.

The conclusion that the condonation of this succession of procedural shortcomings represents a restriction of petitioner's rights is inescapable. This Court has often said that such departures from accepted standards should not be permitted—that to do so encourages looseness in many ways. Petitioner has served the two years of imprisonment while pursuing his remedy to this Court. We cannot "unring" the bell that so casually sent him to prison, but we can and should make the record show that he was not committed to a federal prison in accordance with the accepted standard of criminal procedure.