471 P.2d 367 (1970)
In the Matter of E.J., a Minor, Appellant,
v.
STATE of Alaska, Appellee.
No. 1144.
Supreme Court of Alaska.
July 10, 1970.
John S. Hedland and H. John DeNault, III, Anchorage, for appellant.
G. Kent Edwards, Atty. Gen., Juneau, Harold W. Tobey, Dist. Atty., and Benjamin O. Walters, Jr., Asst. Dist. Atty., Anchorage, for appellee.
Before BONEY, C.J., DIMOND, RABINOWITZ, and CONNOR, JJ., and DAVIS, Superior Court Judge.

OPINION
CONNOR, Justice.
This is a juvenile case which originated when the mother of a twelve-year-old boy sought help in controlling her wayward child. It appears that the chief difficulty was that he would remain away from home, his mother not seeing him sometimes for one or two days.
An intake officer of the family court filed a petition on January 23, 1969, stating that the child had been habitually disobedient, beyond parental control, and in a situation injurious to his health, welfare and morals, jurisdiction being conferred by AS 47.10.010.[1] The next day a hearing was *368 held with the child, the mother, the intake officer, and a social worker present. Action was deferred for several weeks. On March 13, 1969, a hearing was held, the mother and certain social workers being present. On the basis of his own admission the child was declared delinquent, to be placed on probation in the custody of the Department of Health and Welfare until a foster home could be located. It was anticipated that it would take about one week to get the child placed.
On May 20, 1969, a hearing was held, at which the mother appeared with counsel. It was developed that the child had been detained at the McLaughlin Youth Center, operated by the State of Alaska, continuously from March 13 to May 20, 1969. The court stated that the detention of the child had far exceeded any expectations of the court when the earlier order was entered. In view of the mother's having moved to a different neighborhood and expressing her belief that she could control the child, the court vacated the earlier order of delinquency and substituted a declaration that the child was in need of supervision. At the same time that this declaration was made, it was terminated and the child was permitted to return to his mother. Prior to the order of May 20th, an appeal of the delinquency order of March 28th had been taken.
The difficult question we must face is whether to treat this appeal as moot, given the circumstances of this case. The record indicates that the court's order of May 28, 1969 (entered orally on May 20, 1969), provided for three things: (1) release of the minor from custody; (2) vacation ab initio of the delinquency adjudication; and (3) retroactive substitution of an adjudication of "in need of supervision," which status was immediately terminated. The superior court apparently found that this "delinquency" status had prevailed, as this was the justification given for the eight or nine weeks of incarceration. This "delinquency" status, later amended to an "in need of supervision" status, was based completely upon the previous hearing which was had without the required procedural safeguards as required by our rules and by In re Gault, 387 U.S. 1, 87 S.Ct. 1428, 18 L.Ed.2d 527 (1967).
The state argues that the case is mooted by the court's last order terminating the original finding of delinquency, finding that the child was in need of supervision, and then terminating that finding. Furthermore, it is argued that an order finding that the child is in need of supervision carries with it no moral stigma, and any possible disadvantages are too remote and speculative to be meaningful. For a number of reasons, we cannot agree.
The United States Supreme Court in In re Gault, supra, held that before a juvenile could be determined delinquent in a proceeding which could result in commitment to an institution, thus curtailing his freedom, certain requisites must be met. First, written notice of the charges must be given to the juvenile and his parents sufficiently in advance of the proceedings to allow preparation to meet the charges. Second, the child and his parents must be apprised of the right to counsel, including appointed counsel in case of indigency. Third, the child may exercise his privilege against self-incrimination. Lastly, absent a valid confession, the determination of delinquency cannot be sustained in the absence of sworn testimony, which is subject to cross-examination. Our Children's Rules substantially guarantee these same procedural requirements.[2]
Recently, the required standard of proof has been increased from "a preponderance of the evidence" to "beyond a reasonable doubt" in the adjudicatory stages of at least those delinquency proceedings in which a child is charged with an act that would be a crime if committed by an adult. *369 In re Winship, 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (U.S. March 31, 1970).
If the March 28th order was merely a temporary custody order, Gault might possibly not apply. But if it was truly a delinquency determination, then the Gault standards were not met. It is obvious that the court was trying to be helpful in a difficult situation and felt that some expeditious measures should be taken in order to initiate proceedings and obtain care for an uncontrollable child. There were a number of written reports placed before the court, although these did not rise to the Gault standard of proof, or that of our Children's Rule 13(a), requiring that "[a]ll testimony in the juvenile court shall be given under oath or affirmation * * *." At the original delinquency determination there was no such sworn testimony. At some point the process went awry. The judge later did what he could to correct it. He expressed himself as quite shocked at the long incarceration of the child. Regardless of whether the juvenile's record indicates a determination of "delinquency" or "in need of supervision," the standards of Gault and our own Children's Rules were not met.
Having determined that the child was deprived of his rights in this matter, we turn to a determination of the possible collateral consequences attendant upon these proceedings. Appellant brings to our attention Children's Rules 21(d)[3] and 23[4] whereby juvenile records can in certain circumstances be made available to others. The United States Supreme Court in Gault took note of the availability of juvenile records and relied on this fact as one of the supporting reasons for extending to juvenile proceedings certain of the due process requirements of the 14th amendment of the United States Constitution.
"This claim of secrecy [in juvenile proceedings], however, is more rhetoric than reality. Disclosure of court records is discretionary with the judge in most jurisdictions. Statutory restrictions almost invariably apply only to the court records, and even as to those the evidence is that many courts routinely furnish information to the FBI and the military, and on request to government agencies and even to private employers. Of more importance are police records. In most States the police keep a complete file of juvenile `police contacts' and have complete discretion as to disclosure of juvenile records. Police departments receive requests for information from the FBI and other law-enforcement agencies, the Armed Forces, and social service agencies, and most of them generally comply. Private employers word their application forms to produce information concerning juvenile arrests and court proceedings, and in some jurisdictions information concerning juvenile police contacts is furnished private employers as well as government agencies." 387 U.S. at 24-25, 87 S.Ct. at 1442 (footnotes omitted).
Because of the importance of the records of juvenile proceedings, we feel that the usual principles against entertaining moot *370 controversies should not apply in the case at bar. We feel that the potential collateral legal disabilities are sufficient enough that we should act.[5] It is possible that this juvenile record could be made available to school authorities, social workers, parole officers, judges imposing sentence for the commission of crimes, the military services, or prospective employers, all of whom might be influenced to the detriment of the minor. In Sibron v. New York, 392 U.S. 40, 88 S.Ct. 1889, 20 L.Ed.2d 917 (1968), the Supreme Court, in a factual setting not unlike that in the case sub judice, stated that,
"Three years later, in Pollard v. United States, 352 U.S. 354, 77 S.Ct. 481, 1 L.Ed.2d 393, (1957), the Court abandoned all inquiry into the actual existence of specific collateral consequences and in effect presumed that they existed. With nothing more than citations to Morgan and Fiswick, and a statement that `convictions may entail collateral legal disadvantages in the future,' id., at 358, 77 S.Ct., at 484, [1 L.Ed.2d at 397], the Court concluded that `[t]he possibility of consequences collateral to the imposition of sentence is sufficiently substantial to justify our dealing with the merits.' Ibid. The Court thus acknowledged the obvious fact of life that most criminal convictions do in fact entail adverse collateral legal consequences." 392 U.S. at 55, 88 S.Ct. at 1898 (footnote omitted).
We, too, recognize the "fact of life" that juvenile records are easily obtained and may have serious effects upon the life of the minor. Furthermore, it is a generally accepted rule that if there remain collateral legal disabilities apart from the sentence, the appeal is not mooted even though the sentence has been served. Benton v. Maryland, 395 U.S. 784, 89 S.Ct. 2056, 23 L.Ed.2d 707 (1969); Sibron v. New York, 392 U.S. 40, 88 S.Ct. 1889 (1968). We believe that the child has been deprived of his constitutional rights with attendant collateral disabilities. Because the proceedings below were infected with these disabilities, they cannot stand.
We approve the vacation of the order which was entered March 28, 1969, which declared appellant a delinquent. Because the later order was based upon the findings of the first hearing, we remand for the vacation also of the order of May 28, 1969, which declared and then terminated the "child in need of supervision" status.
NOTES
[1] "Sec. 47.10.010. Jurisdiction. (a) Proceedings relating to a minor under 18 years of age residing or found in the state are governed by this chapter, except as otherwise provided in this chapter, when the minor * * * (2) by reason of being wayward or habitually disobedient is uncontrolled by his parent, guardian or custodian; (3) is habitually truant from school or home, or habitually so conducts himself as to injure or endanger the morals or health of himself or others * * *."
[2] See, e.g., Children's Rules 6(b), 6(c), 8(e), and 19 for notice provisions; 3(c), 12(c) (4), 12(e) (2), 14(a), 14(b), 15 (a), 15(b), for right to counsel; 12(e) (3) and 12(e) (4) for the privilege against self-incrimination; 16, 17, 18, 20, for determination of delinquency.
[3] "(d) Failure of Proof. Where, after hearing, the court finds that the allegations of the petition alleging delinquency or dependency have not been proved by a preponderance of the evidence, the court shall dismiss the case, seal all files and records thereof, delete all reference to the case from any docket, register, or index, and forward by certified or registered mail such sealed files and records to the presiding judge of the superior court for the appropriate judicial district. Thereafter no person or agency shall have access to such sealed files or records, or names connected therewith, except upon the order of the presiding judge upon good and sufficient cause shown upon a hearing on the record."
[4] "Adjudication, Orders, and Dispositions Inadmissible. No adjudication, order, or disposition of a juvenile case shall be admissible in a court not acting in the exercise of juvenile jurisdiction except for use in a presentencing procedure in a criminal case where the superior court, in its discretion, determines that such use is appropriate."
[5] Because this appeal concerns fundamental constitutional rights, and since there is a need to clear the name of the child, we believe that a determination of the legality of the "termination" of "delinquency" status is necessary, since this determination provided the factual and legal basis for a later finding of "in need of supervision." See Street v. New York, 394 U.S. 576, 89 S.Ct. 1354, 22 L.Ed.2d 572 (1969); Sibron v. New York, 392 U.S. 40, 88 S.Ct. 1889, 20 L.Ed.2d 917 (1968); Carafas v. LaVallee, 391 U.S. 234, 88 S.Ct. 1556, 20 L.Ed.2d 554 (1968); Ginsberg v. New York. 390 U.S. 629, 88 S.Ct. 1274, 20 L.Ed.2d 195 (1968); Ex parte Byrnes, 26 Cal.2d 824, 161 P.2d 376 (1945); People v. Williams, 4 Ill. App.2d 506, 124 N.E.2d 537 (1957).