**UNITED STATES of America**

v.

**Leroy TATE.**

**Crim. No. 70–70.**

United States District Court,
E. D. Pennsylvania.

Dec. 1, 1971.

L. C. Bechtle, U. S. Atty., Philadelphia, Pa., for plaintiff.

Sanford Kahn, Philadelphia, Pa., for defendant.

## MEMORANDUM AND ORDER

TROUTMAN, District Judge.

Defendant was indicted for violating 50 App. U.S.C. § 462 by failing to report for induction into the Armed Forces. Before the Court is defendant's motion to dismiss the indictment on the ground of unnecessary and unreasonable delay. As a result of the delay, which totaled approximately thirty-three months, defendant contends he was denied (1) a speedy trial under the Sixth Amendment; (2) due process of law under the Fifth Amendment; and (3) a trial without unnecessary delay under Rule 48(b) of the Federal Rules of Criminal Procedure.

The government, by stipulation with defendant's counsel, introduced the following facts into evidence:

1. On July 16, 1968, the registrant was issued an Order to Report for Induction on August 1, 1968.

2. On July 23, 1968, letter was sent requesting registrant to report for induction on August 1, 1968.

3. On August 1, 1968, the registrant failed to report as ordered.

4. On October 28, 1968, the registrant reported to his local board where he was told to report for induction on November 7, 1968, at the State Armory.

5. On November 7, 1968, the registrant did not report. The local board advised that he had reported to the local board and he once again agreed to report on November 8, 1968.

6. On November 8, 1968, the registrant reported to 401 North Broad Street, Philadelphia, Pennsylvania, but left after being found acceptable. Before processing could be completed he departed from the Induction Station without authorization, leaving his overcoat behind.

7. On January 13, 1969, United States Attorney Alexander Greenfeld, District of Delaware, indicated that venue may be in Philadelphia, Pennsylvania, and that he would discuss this matter with the Department of Justice.

8. On February 25, 1969, Alexander Greenfeld advised Drew J. T. O'Keefe that venue for prosecution was in this jurisdiction.

9. On April 8, 1969, Merna Marshall, Assistant United States Attorney, wrote and requested a copy of the Selective Service file of Leroy Tate.

10. On April 23, 1969, Colonel Willard Silverberg transmitted a copy of the file to the United States Attorney's office for the Eastern District of Pennsylvania, date of receipt of his letter was stamped April 24, 1969.

11. On May 12, 1969, Merna Marshall advised Special Agent Thomas F. Carrig that she would order Tate's selective Service file from Delaware State Headquarters for review and would then render a prosecutive opinion.

12. On October 8, 1969, Merna Marshall advised Special Agent Carrig that the review of Tate's Selective Service file had not been completed and, therefore, she was unable to render a decision concerning prosecutive action.

13. On February 19, 1970, the defendant was indicted and a bench warrant was issued by Judge John B. Hannum and bail was set at $1,000.00 o/r.

14. On March 30, 1970, and April 9, 1970, Special Agent Carrig checked the records of the Marshal's office and Chief Deputy Nicholas Vince advised that Tate had not turned himself in subsequent to February 19, 1970. He forwarded the bench warrant to the United States Marshal in Wilmington, Delaware, and has had no report from that office.

15. On April 29, 1970, an attempt was made to locate Tate at his parents' address but with negative results.

16. On April 30, 1970, an attempt was made to locate Tate at 1400 North French Street, Wilmington, Delaware, but with negative results.

17. On May 4, 1970, several places where Tate was previously employed were contacted in an attempt to locate his present whereabouts, but with negative results.

18. On June 11, 1970, an attempt was made to contact Mrs. Adelaide Tate but with negative results.

19. On June 25, 1970, another attempt was made to contact Mrs. Tate. She was not home. However, John Tate, the defendant's uncle, was at the residence. He stated that he knew the whereabouts of the defendant, but would not tell the FBI. Defendant was not there.

20. On November 12, 1970, attempt was made to contact Mrs. Adelaide Tate, but with negative results. However, defendant's brother, Charles Tate, was interviewed but could furnish no positive

information relative to defendant's whereabouts.

21. On November 16, 1970, Mrs. Adelaide Tate advised that she had heard nothing from her son since she was last contacted nor had she received any information relative to his present whereabouts.

22. On November 24, 1970, defendant failed to appear at his scheduled arraignment and another bench warrant was issued.

23. On December 30, 1970, Mr. Howard Brown of Community Action of Greater Wilmington was contacted. He was a friend of the defendant when they were students at Delaware Community College. He advised that he had not seen Tate for quite some time.

24. On January 4, 1971, Dr. Janet Cramer, Methadone Clinic, Delaware Division, Wilmington Medical Center, advised that Tate had reported to the clinic on only two occasions, the last being October 31, 1968.

25. On January 15, 1971, Earl Tate was contacted and advised that he did not know the present whereabouts of his brother.

26. On January 15, 1971, Mrs. Adelaide Tate advised same as above.

27. On February 12, 1971, Mr. C. Charles Carmichael, Assistant Principal, and Dr. Earl Jackson, Principal of Bancroft High School, Wilmington, Delaware, recognized defendant from his photograph and stated that from time to time he entered the school to sell pictures of Martin Luther King, etc. They stated that he was living and working in Philadelphia, but could not furnish his address. They stated, however, that he was working for African Cultural Arts Forum (ACAF).

28. On February 25, 1971 and March 11, 1971 Mr. Charles Carmichael was contacted but stated he had not seen the defendant in Wilmington since his first contact.

29. On May 7, 1971, the African Cultural Arts Forum was contacted and a conversation was held with a sales clerk, Dowd, who would not give his last name. Dowd was unable to identify a photograph of Tate. He stated that he had been employed at the African Cultural Arts Forum for about two months, but knew no one by the name of Leroy Tate. Efforts to interview the owner-proprietor, Cherief (also no last name) proved negative.

30. On July 28, 1971, Rishie Abul Samad, Director of the African Cultural Arts Forum was contacted and advised that Tate had previously worked for the African Cultural Arts Forum, but had not been with them in several months. He advised he had no idea where Tate could be unless it was at his parents' home.

31. On August 12, 1971, defendant, Tate, was apprehended at the African Cultural Arts Forum under the name of Eurel Abdur (Muslim name).

From the foregoing facts, the delay may be logically broken down into two distinct periods: (1) the pre-indictment delay extending from the date of the failure of defendant to submit to induction on November 8, 1968, until his indictment on February 19, 1970,—a delay of approximately fifteen months, and (2) the post-indictment delay extending from February 19, 1970, until the arrest on August 12, 1971,—a delay of approximately eighteen months. We will treat each period separately.

*I. Post Indictment Delay*

██ During the period from defendant's indictment on February 19, 1970, until his arrest on August 12, 1971, the FBI made fifteen attempts to locate the defendant at his home, at his place of work, and at various other places where defendant was known. Two bench warrants were issued. Defendant now argues that he was neither aware that he had been indicted nor attempting to conceal his whereabouts. Defendant was aware, however, that he had failed to report for induction pursuant to an order by his local board. Consequently, we find that defendant was a fugitive and that reasonable efforts were made to lo-

cate him. In his concurring opinion in Dickey v. Florida, 398 U.S. 30, 48, 90 S. Ct. 1564, 1574, 26 L.Ed.2d 26 (1970), Mr. Justice Brennan stated:

"A defendant may be disentitled to the speedy-trial safeguard in the case of a delay for which he has, or shares, responsibility. It has been held, for example, that an accused can not sustain a speedy-trial claim when the delay results from his being a fugitive from justice * * *".

The rationale underlying this statement is equally applicable to defendant's due process and Rule 48(b) arguments as it is to the speedy-trial guarantee. Thus, since this post-indictment period of delay is attributable to the defendant, he cannot be heard to complain of such delay.

## II. Pre-Indictment Delay

To determine whether a pre-indictment delay is sufficient to warrant dismissal, the standards established by the appellate courts appear to be similar with respect to claims of denial of a speedy trial and claims of denial of due process. With respect to the due process claim, the Third Circuit in United States v. Feldman, 425 F.2d 688, 691 (3rd Cir. 1970) stated:

"We agree with the recognition in Ross v. United States, [121 U.S.App. D.C. 233,] 349 F.2d 210 (1965) relied on by the defendant, that, in treating a defendant's claim of prejudicial delay, his rights under the due process clause must be determined by a balance between the need of law enforcement officials to delay the prosecution and the prejudice to the defendant caused by this delay."

Similarly, in considering the right to a speedy trial, Mr. Justice Brennan stated in his concurring opinion in Dickey v. Florida, *supra*, 398 U.S. at 52, 90 S.Ct. at 1576:

"Thus the crucial question in determining the legitimacy of governmental delay may be whether it might reasonably have been avoided—whether it

was unnecessary. To determine the necessity for governmental delay, it would seem important to consider, on the one hand, the intrinsic importance of the reason for the delay, and, on the other, the length of the delay and its potential for prejudice to interests protected by the speedy-trial safeguard."

Thus, we shall consider the reason for the delay in the instant case against the length of the delay and the prejudice, if any, caused by the delay.

### A. Reasons for the Delay

■ The government has offered several reasons for the delay. Initially, a certain amount of time was required for the FBI investigation and the resolution of a venue problem between the United States Attorney's offices in Delaware and the Eastern District of Pennsylvania. The defendant's Selective Service file apparently was received by the United States Attorney's office in late April or early May, 1968. Thereafter, a period of nine months lapsed until the return of the indictment. The government attributed this delay to the change of administration and to severe shortages of manpower in the United States Attorney's office. This explanation clearly indicates that there was no deliberate attempt by the government to use delay to harm the accused nor was such delay purposeful or oppressive. Dickey v. Florida, *supra*, at 51, 90 S.Ct. 1564 (Brennan, J., concurring); Pollard v. United States, 352 U.S. 354, 361, 77 S. Ct. 481, 1 L.Ed.2d 393 (1957).

### B. The Length of the Delay

The pre-indictment delay constituted fifteen months. Six months of the delay were adequately justified, but the remaining nine months are attributed to a change in administration and a shortage of manpower in the United States Attorney's office. Although we recognize that inefficiency or negligence of Government is not a legal justification for a deprivation of a fundamental right, Dickey v. Florida, *supra*, 398 U.S. at 51,

90 S.Ct. 1564 (Brennan, J., Concurring); United States v. Colitto, 319 F.Supp. 1077, 1081 (E.D.N.Y.1970), the question whether a delay in prosecution represents a deprivation of these rights can be determined only by a realistic examination of all of the "circumstances" as they affect prosecution and defendant. Pollard v. United States, 352 U.S. 354, 361, 77 S.Ct. 481, 1 L.Ed.2d 393 (1957).

### C. Potential Prejudice to Defendant

■ Initially, defendant alleges that prejudice should be presumed from the delay. However, a delay of a year and a quarter prior to indictment is not inherently prejudicial. United States v. Blanden, 334 F.Supp. 1179, n. 4 (E.D.Pa. 1971) (Luongo, J.) Thus, the burden is on the defendant to show prejudice.

Generally, Selective Service cases are non-jury trials based upon documentary evidence. Here, defendant maintains that the delay impairs his ability to mount a defense. By way of defense, defendant intends to prove that he, as a senior at Delaware State College, was reclassified I-A by his local board. Since he had missed a prior term he was not scheduled to graduate until the next fall. Therefore, on May 10, 1968, defendant wrote his local board requesting an extension of his II-S deferment until graduation. On the following day, defendant took part in what he contends was a constitutionally-protected demonstration which received wide publicity in local newspapers. For his participation, in this demonstration, defendant was supended from the college, but later reinstated. In the interim between the suspension and reinstatement, the local board denied the request for a student deferment which he contends he ordinarily would have received as a matter of course.

The defendant contends that the constitutionally-protected nature of the demonstration is crucial to his defense and that due to the delay, he has been able to reach only one witness to testify to the non-violent, non-disruptive nature of the demonstration.

The government contends that this defense is without merit. More importantly, it agrees that the non-violent character of the demonstration will not be contested. The defendant, therefore, will suffer no prejudice because of the nine-month government delay.

We conclude that the inability to obtain numerous witnesses for the sole purpose of testifying as to the constitutionally protected nature of the demonstration constitutes, under these circumstances, insufficient prejudice to warrant a dismissal of the indictment.

Accordingly, defendant's motion to dismiss the indictment will be denied.