THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v GEORGE HANKINS, Appellant.

Third Department, June 17, 1976

*J. Raymond Fisher* for appellant.

*Sol Greenberg, District Attorney (Dennis M. Acton* of counsel), for respondent.

HERLIHY, J. The issue in this case is whether or not the

defendant was denied his constitutional and statutory rights to a speedy trial as a result of the hiatus of approximately 41 months between the date of the indictment (July 29, 1971) and the date of trial (January 7, 1975).

On May 1, 1971 the defendant so operated a motor vehicle as to cause injury and death and for which he was arrested on that day. He was indicted on *July 29, 1971.* The indictment charged defendant with murder, manslaughter in the second degree, criminally negligent homicide, assault in the first degree and assault in the second degree. The case was apparently scheduled for trial in October of 1971 and on the day set, October 5, 1971, the defendant and his counsel were present in court and ready to proceed. The prosecuting attorney, however, requested an adjournment because a principal witness was scheduled to enter the hospital either that day or the following morning for surgery. The defendant agreed to an adjournment under those circumstances and at his request the court thereupon released him from custody. The case was to be marked "over the term" and rescheduled for the November Term with the court directing the prosecuting attorney to "reschedule the case as expeditiously as possible".

By a motion returnable on *November 8, 1973,* the defendant moved for a dismissal of the indictment upon the ground that he had been denied a speedy trial. The affidavit of defense counsel in support of the motion recited the charges and that over two years had then passed since the matter was placed on the criminal calendar. In addition he recited that pursuant to CPL 30.30 the charges should be dismissed because the trial was not reached in six months. The prosecuting attorney submitted an opposing affidavit dated November 6, 1973 which asserted that the People had at all times been ready to try the case and has so answered the calendar calls. The prosecuting attorney also noted that there were no other defense motions then pending for decision.

The court did not render a decision on the speedy trial motion and so the defendant moved again by motion returnable *September 5, 1974* for a dismissal of the indictment upon the ground that he had been denied a speedy trial. Defense counsel submitted his affidavit dated August 13, 1974 which noted the prior request for the same relief of November 8, 1973 and that over three years had passed since the case went on the calendar. The prosecuting attorney submitted an affidavit in response wherein it was noted that the People had at all

times been ready for trial and so marked the case at all calendar calls.

The court finally rendered a decision on *December 31, 1974* denying the relief sought upon the ground that since the People were at all times ready, CPL 30.30 had not been violated and apparently upon the court's awareness of calendar congestion in Albany County.

Trial commenced on January 7, 1975 and on January 8, 1975 the jury found defendant guilty of the charges of criminally negligent homicide, a class E felony, and assault in the second degree, a class D felony. The defendant was sentenced on January 15, 1975 to two concurrent one-year terms of imprisonment and has since served his entire sentence. Through this appeal he seeks to have the felony convictions expunged from his records.

It should be observed that from May 1, 1971 until the release from custody precipitated in October of 1971 because of the People's request for an adjournment, the defendant had been imprisoned for about five months or nearly one half of the sentence eventually imposed.

CPL 30.30 is clearly not applicable to the present case. It expressly excepts from its provisions charges relating to violations of sections 125.25, 125.15 and 125.10 of the Penal Law and all of these sections were charged in the indictment herein. Furthermore, it was expressly made applicable only to actions commenced on or after May 1, 1972 (L 1972, ch 184).

In *People v Prosser* (309 NY 353, 358) the court stated that pursuant to former section 668 of the Code of Criminal Procedure the burden was upon the People to establish good cause for undue delay.

In *People v Ganci* (27 NY2d 418) it was held that a 16-month delay, where there is calendar congestion and indictments are processed in the sequence of their presentment, was not chargeable to a failure on the part of the State to provide a speedy trial.

In *People v Minicone* (28 NY2d 279) it was held that a 45-month delay was more prejudicial than the 16-month in the *Ganci* case where limitation on court facilities was considered a valid excuse. The indictment was dismissed.

In *People v Purdy* (29 NY2d 800) the court in considering a 16-month delay declined to rely solely on the fact that indictments were being processed substantially to excuse the delay,

but noted that the delays had been caused by defendant and his counsel.

In *People ex rel. Franklin v Warden* (31 NY2d 498) the court held that the ready rule as found in CPL 30.30 did not require dismissals where the prosecution was in fact ready to proceed, but delay was being caused by calendar congestion and lack of court facilities. The court ordered a trial preference, however, so that the cases then before it would be tried in three months. These cases had been pending for about 18 months as of the time the court rendered its decision so that there would be at most a 21-month delay.

In *People v Johnson* (38 NY2d 271) the defendant was indicted for murder and was incarcerated for 18 months prior to trial. The defendant did not deny killing the victim but claimed self-defense. On March 29, 1972 he was ready for trial and the case was set down for trial on April 11, 1972. The court noted that the delay in determining a motion should not be attributed to a defendant and that it does not mean that a defendant is not ready for trial. On July 17, 1972, the defendant informed the trial court he would like to go to trial, but the court granted the prosecution an adjournment because of 8 or 10 cases being ahead of it. The cases were "older" cases. On March 26, 1973 the defendant after repeatedly requesting trial moved for a dismissal because of a denial of a speedy trial and alleged that an important defense witness had left the area and could not be found. The trial court summarily denied the March motion. On July 2, 1973 the defendant pleaded to manslaughter in the second degree saying he had lost his witness and had no alternative.

In *Johnson* the court noted that the five factors set forth in *People v Taranovich* (37 NY2d 442, 445) are not necessarily decisive individually or in any particular combination, but must be weighed together in the light of the purpose of the speedy trial rule. The court reiterated that it is the State's duty to see that a defendant is promptly brought to trial. The court found that the defendant's efforts to receive a trial plus his incarceration and the indication of prejudice required a dismissal even though the People's failure may have been caused by a lack of manpower.

In *People v Kelly* (38 NY2d 633) defendant was indicted on December 31, 1970 and brought to trial on March 5, 1973. Out of the 27-month period he was incarcerated for six months. Eleven months of delay were chargeable to the defendant and

ten months' delay due to the incapacity of a prosecution witness. He was originally charged with murder and the jury found manslaughter. In addition to the delays noted above, about five months of the delay resulted from the prosecution's involvement in several notorious cases. The only real issue in that case was whether or not his confession was genuine. The court found no prejudice and that the People had acted reasonably in regard to priorities.

The examination of the above cases reveals that no particular time of delay will require a dismissal; however, a delay of 44 months from arrest in the present action is upon its face a patent frustration of the right to a speedy trial and in the absence of a showing of facts which establish that the delay was compatible with the sound administration of justice, the right of the defendant must be vindicated by a reversal of the judgment and a dismissal of the indictment *(People v Minicone,* 28 NY2d 279, *supra; People v Johnson,* 38 NY2d 271, *supra).*

In this particular case the record establishes that as early as October 5, 1971 the defendant appeared in court for trial, but the prosecution requested an adjournment. The transcript of the proceedings of October 5, 1971 does not establish that the People needed the presence of the victim-witness, but the defendant did not raise any objection and obviously would not be in a position to know if the witness was in fact a key witness. Defense counsel at that time expressly noted that the defendant had already been in jail about five months and the court then released him essentially without bail and directed that the case be rescheduled for the November Term. If there is any acquiescence by the defendant in the delay herein, it is at most for a period of one month and the record does not actually establish any acquiescence on his part in the delay which occurred on October 5, 1971.

All of the speedy trial cases emphasize that the burden is upon the State to promptly proceed to trial. In response to the motion by the defendant for a speedy trial the prosecution answered that it was at all times ready to proceed. Upon appeal the prosecution refers to a portion of the trial transcript which contains testimony by the witness referred to on October 5, 1971 to the effect that she was in the hospital about 18 months from and after the accident. That testimony, however, does not establish the unavailability of the witness at any particular Trial Term and this was not offered as an

excuse in response to the formal pretrial motions by the defendant.

The question posed by a pretrial motion based upon the denial of a speedy trial is whether or not the case should go to trial at all. Under such circumstances, it is doubtful that this court should even consider the trial testimony referred to by the prosecutor, but, in any event, such testimony is entirely inadequate to establish that the prosecution was to any substantial extent delayed because of the illness of a material witness. This record establishes that the People and the defendant were ready for trial with the possible exception of one month which might be excusable on the part of the People.

In this case the State, referring to both the trial court and the prosecution, were formally put on notice by the defendant through his motion of October 29, 1973 (returnable November 8, 1973) that he was not acquiescing in any delay and was insisting upon his right to a speedy trial. The prosecution in response stated that it was ready for trial and had at all times been ready to proceed. In February of 1973, however, the Court of Appeals in *People ex rel. Franklin v Warden* (31 NY2d 498, *supra)* some eight months before the first motion herein, had already declared that merely being ready for trial was not a complete excuse and that where a defendant was insisting upon his right to a speedy trial, calendar congestion could not be a sufficient excuse to deny the right. The record does not indicate that in response to the defendant's first motion, the prosecution made any attempt to secure a preference or to otherwise carry out its obligation to assure a speedy trial. The trial court remained entirely silent by simply not deciding the motion until it was renewed and after another 13 months of delay had ensued.

In the recent case of *People v Ranellucci* (50 AD2d 105) this court was presented with a case involving a total delay of about 17 months from indictment until a defendant's *second* motion for a speedy trial. In that case it was determined that the question of court congestion *could* offer a valid excuse for the delay involved. In that particular case the determination of the appeal was withheld and the matter remitted for a hearing on the issue of calendar congestion and court priorities. The period of delay in *Ranellucci* from the time of the first motion until the second motion was about 4 months and

until trial was about 6 months with a total delay from indictment until trial of about 19 months.

In the instant case the only excuse offered by the trial court in its decision for a delay of some 44 months after arrest is the summary conclusion of calendar congestion. The prosecution offered no excuse at all on either motion. Curiously, the case of *People v Ranellucci (supra)* involving only a charge of larceny was tried by the prosecution in October of 1974 while the first motion in the instant case before the same court had then been pending for about one year or slightly less and after the motion had been renewed. Of further significance, the instant case involving homicide charges had been pending over three years when the *Ranellucci* case was tried and at which time *Ranellucci* had been pending only about 19 months. In the *Ranellucci* case this court observed (50 AD2d, at p 106) that "[a]ny delay by a trial court in determining motions made pursuant to CPL 210.20 (subd 1, par [g]) compounds the inherent delay which precedes the motion and in itself could be prejudicial to a defendant in appropriate factual circumstances". Those circumstances are present in this case where a defendant having already been under indictment for more than two years is faced by complete inaction for over 13 months after having formally asserted his right to a speedy trial. The prosecution offers no excuse at all and the asserted calendar congestion is inappropriate in view of the power of the court and the prosecution in tandem as the State to promptly secure the constitutional right of the defendant regardless of the existence of prior justifiable reasons for delay. In *People v Ranellucci (supra)* the delay from indictment to trial and/or from motion to decision and trial was not of the extreme delay presented in this case.

The defendant made no allegations in this case that there was any objective prejudice to his case arising from the delay such as a loss of a witness (cf. *People v Johnson,* 38 NY2d 271, *supra).* In *People v Taranovich* (37 NY2d 442, 445, *supra)* it was noted that the following factors should be examined in balancing the merits of a speedy trial claim:

"(1) the extent of the delay; (2) the reason for the delay; (3) the nature of the underlying charge; (4) whether or not there had been an extended period of incarceration; and (5) whether or not there is any indication that the defense has been impaired by reason of the delay."

*People v Taranovich (supra)* involved a question of a one-

year delay from arraignment until indictment. Such a delay in and of itself is not of such a nature as to clearly indicate an impairment of the defense. In *Taranovich,* however, it was recognized that a defendant need not show specific prejudice and where there has been great delay, prejudice need not be shown. In this case the delay of over three years and of over one year following a motion based upon a denial of a speedy trial renders the question of actual prejudice academic. Accordingly, the first factor quoted above weighs heavily in favor of the defendant and the fifth factor is irrelevant. The prosecution offered no reason for the delay preceding the motions and the only reason asserted in this record is calendar congestion. Even the most extreme calendar congestion, however, does not excuse the prolonged failure to promptly hold a trial after the motion of October 29, 1973 and, accordingly, the second factor of *Taranovich* is not in favor of the State. The underlying charge (the third factor) is of such a serious nature as to require a prosecutor to proceed with caution and deliberation; however, the indictment was returned about three months after the underlying incident occurred and there is nothing to indicate any further cause for delay in preparation. In any event, as to the third factor, the prosecution upon the motions herein took the position that it was ready. The fourth factor relating to pretrial incarceration is in this case five months and not of such a duration as to weigh heavily in the defendant's favor.

The problem with attempting to apply the *Taranovich* case to the instant situation is that it dealt with the limited question of delay prior to indictment and while its factors are relevant to both that situation, and one involving delay from the preferment of charges to trial, its factors are not readily relevant where the defendant has raised the issue of his right to a speedy trial and still over a year elapsed with total inaction on behalf of the State.

Pragmatically, the conclusion must be reached that where a court makes no response to a motion based upon a denial of the right to a speedy trial and where the prosecution makes no apparent attempt to have the case tried (aside from marking it "ready") the net effect is a denial of the only procedural device a defendant has to secure his right in the court where the criminal charges are pending. Absolutely no excuse was offered by the prosecution for this denial of the defendant's right and while calendar congestion might be some excuse

prior to the first motion, it offers no excuse when a reasonable time passes after the motion (see *People ex rel. Franklin v Warden,* 31 NY2d 498, *supra). People v Imbesi* (38 NY2d 629) is not controlling as to the present factual pattern.

This court is well aware that Albany County has effectively accomplished its duties in handling its criminal case loads insofar as proceedings before the County Court are concerned on a collective basis. What has happened in this case is that which will probably occur from time to time in any system of justice, but the interests of society as well as individual defendants require that the constitutional rights of a defendant be preserved in a system over which he has absolutely no procedural control except in regard to creating delay which is absent from this case. The burden in this case is upon the State to establish counterbalancing reasons for delay which would fall within the rubrics of proceeding to trial in a reasonably prompt manner and this case is devoid of any such meaningful reasons.

From the record it appears that a very substantial portion of the Albany County Court litigation is being handled by one Judge. To this court is appears that the work should be more evenly distributed with the second Judge, or application made to the proper authority for the assignment of additional judicial manpower. As noted in the brief of the District Attorney, the second full-time County Judge was precluded from handling any criminal matters which arose prior to January 1, 1974.

The judgment should be reversed, on the law and the facts, and the indictment dismissed.

LARKIN, J. (dissenting). We respectfully dissent. The sole issue raised by the defendant on this appeal is his claim that the trial court erred in refusing to dismiss his indictment because he had been denied his right to a speedy trial (CPL 210.20, subd 1, par [g]; CPL 30.20, 30.30; Civil Rights Law, § 12). In support of defendant's claim, he alleges a delay of approximately 44 months from the time of his arrest to his trial (approximately 41 months from the indictment to the trial).

Defendant alleges no prejudice, such as the loss of a witness, which would be a crucial factor in finding the delay to be intolerable *(People v Johnson,* 38 NY2d 271). Unlike the situation in *People v Johnson (supra),* where the delay was

caused by a shortage of trial lawyers in the prosecutor's office, the People were ready for trial at all times herein and so marked the case at every calendar call (see *People ex rel. Franklin v Warden,* 31 NY2d 498; *People v Ganci,* 27 NY2d 418). It further appears that defendant was incarcerated for only 5 of the 40 plus months between his arrest and trial and that a substantial portion of the delay was a result of the physical incapacity of a key prosecution witness, both of which are facts tending to excuse a delay *(People v Kelly,* 38 NY2d 633).

Although the defendant does not even allege prejudice to his case because of the delay, the majority hold that after he has been tried by a jury and found guilty we must reverse the judgment of conviction, dismiss the indictment and set the defendant free.

There must be some order in which criminal cases are brought to trial. Some defendants remain in jail to await trial while others are out on bail awaiting trial. The courts have heretofore held that priority in trial must go to jail cases *(People v Kelly, supra).* Thus, the prosecutor is on the horns of a dilemma: If he should fail to try the jail cases first, he runs the risk of having those persons so held released in their own recognizance or, at the worst, having their indictments dismissed. If he tries the jail cases first he runs the risk, as in the instant case, of a great delay before he can reach certain non-jail cases, as a result of which the non-jailed defendant seeks dismissal because of delay. The tremendous backlog of cases, the increase in crime and the crowded dockets of criminal court Judges all militate against the conclusion of the majority that a reversal and dismissal is mandated in the instant case.

The majority, in applying the five-pronged test suggested by the Court of Appeals in *People v Taranovich* (37 NY2d 442), hold that the first factor, the extent of the delay "weighs heavily in favor of the defendant" that the fifth factor "whether or not there is any indication that the defense has been impaired by reason of the delay" becomes irrelevant. The Court of Appeals stated in *People v Taranovich (supra,* p 445): "we hasten to add that no one factor or combination of the factors set forth below is necessarily decisive or determinative of the speedy trial claim, but rather the particular case must be considered in light of all the factors as they apply to it". In our anxiety to protect the rights of the defendant, we should

not lose sight of the rights of the public to expect and receive justice from our courts. That the accused will be brought to trial and, if found guilty, punished, is a basic tenet of our system of justice, and mere delay, without proof that such delay has affected the right or ability of the defendant to defend himself in the trial, is not, in our view, sufficient ground to violate this basic principle of justice.

Indeed, among the cases cited by the majority *(People v Johnson,* 38 NY2d 271, *supra; People v Taranovich, supra; People ex rel. Franklin v Warden,* 31 NY2d 498, *supra; People v Purdy,* 29 NY2d 800; *People v Minicone,* 28 NY2d 279; *People v Ganci,* 27 NY2d 418, *supra)* there is not one case where a conviction, after trial, was reversed because of delay alone. Therefore, the cases do not support, in our view, the drastic result obtained by the majority in this case. We would consider the allegations of the defendant in the instant case in the light of the approach of the United States Supreme Court as outlined in *United States v Ewell* (383 US 116, 120): "We cannot agree that the passage of 19 months between the original arrests and the hearings on the later indictments itself demonstrates a violation of the Sixth Amendment's guarantee of a speedy trial. This guarantee is an important safeguard to prevent undue and oppressive incarceration prior to trial, to minimize anxiety and concern accompanying public accusation and to limit the possibilities that long delay will impair the ability of an accused to defend himself. However, in large measure because of the many procedural safeguards provided an accused, the ordinary procedures for criminal prosecution are designed to move at a deliberate pace. A requirement of unreasonable speed would have a deleterious effect both upon the rights of the accused and upon the ability of society to protect itself. Therefore, this Court has consistently been of the view that 'The right of a speedy trial is necessarily relative. It is consistent with delays and depends upon circumstances. It secures rights to a defendant. It does not preclude the rights of public justice.' *Beavers v. Haubert,* 198 U.S. 77, 87. 'Whether delay in completing a prosecution * * * amounts to an unconstitutional deprivation of rights depends upon the circumstances * * *. The delay must not be purposeful or oppressive' *Pollard v. United States,* 352 U.S. 354, 361. '[T]he essential ingredient is orderly expedition and not mere speed.' *Smith v. United States,* 360 U.S. 1, 10."

Applying the direction of the United States Supreme Court

in *Ewell (supra)* and the directions of the Court of Appeals in *Taranovich (supra)*, we determine that the defendant was not deprived of his due process right to a speedy trial and that the conviction should be affirmed.

SWEENEY, J. P., and KANE, J., concur with HERLIHY, J.; MAHONEY and LARKIN, JJ., dissent and vote to affirm in an opinion by LARKIN, J.

Judgment reversed, on the law and the facts, and indictment dismissed.