Wachtler, J.
The defendant was incarcerated for 18 months awaiting trial on an indictment charging him with murder and possession of a weapon as a misdemeanor. He claims that he repeatedly but unsuccessfully demanded a prompt trial and finally pleaded guilty to manslaughter in the second degree only because, in the interim, an important defense witness moved from the area and could not be located. The delay was caused by a shortage of trial lawyers in the *273 prosecutor’s office. The question is whether under these circumstances the State has met its obligation to provide the accused with a speedy trial guaranteed by statute (CPL 30.20; Civil Rights Law, § 12) and the Federal Constitution (US Const, 6th Arndt; Klopfer v North Carolina, 386 US 213). We hold that the defendant’s right to a speedy trial was violated. The plea must be set aside and the indictment dismissed.
On December 7, 1971 Fred Womack was stabbed to death on a street outside the defendant’s apartment. The defendant was arrested and incarcerated on January 7, 1972 and on January 27 he was indicted for murder and misdemeanor possession of a weapon in connection with the Womack homicide. At the arraignment, held on February 18, he pleaded not guilty. As the record later indicates, the defendant did not deny the killing but claimed instead that he acted in self-defense. In March he moved for a bill of particulars and requested that an investigator be assigned to assist in his defense. On March 29 he announced that he was ready for trial and the case was set down for trial on April 11, 1972.
On the trial date an Assistant District Attorney informed the court that a trial prosecutor had not yet been assigned to the case and the court granted an adjournment to May 2.[1] On that date the trial prosecutor appeared and requested that the case be adjourned to May 25. Although no reason was given for the request, it was summarily granted. Bail was fixed at $25,000 over the District Attorney’s objection that it should be set at $50,000.
On May 25 the case was adjourned to June 19 and the defendant’s request for a bail reduction was denied. On June 19 defense counsel informed the court that he had just received an order granting his earlier motion for an investigator and requested that the case be adjourned for a month.[2] He also requested that bail be reduced to $5,000—an amount within the defendant’s means. The court granted the adjournment but denied the bail application.
On July 17 the defendant informed the court that he would *274 "like to go to trial” but the prosecutor stated that this was impossible because he had "approximately 8 or 10 cases ahead of this”. The court granted the adjournment noting that "there are cases of much older vintage, which are going over to September. In the regular course, this case is not going to be tried for some period of time.” The defendant .then personally made a heated and emotional application for reduction of bail, which was denied.
On September 21 the defendant announced that he was ready for trial and the District Attorney conceded that he was not because he still had older cases which he had to try first. The case was adjourned to October 11 at which time the prosecutor stated that he was "actually on trial” on another case. An adjournment was granted to November 9.
On October 25 defendant sought a writ of habeas corpus in Federal court claiming, inter alia, that he had been denied his right to a speedy trial. Although the prosecutor defaulted, the application was denied because the defendant had not exhausted available State remedies. Returning to the trial court on November 9 the defendant found that the prosecutor planned to try another "older” case on the following day and thus was still not ready to proceed with the defendant’s trial. It was adjourned to December 4. The defendant then applied for a writ of habeas corpus in the Bronx Supreme Court which, after a hearing, was denied "on condition that he proceed to trial on December 4”.
On December 4 the prosecutor made the same excuse and although the court noted that "this is one [case] that calls for an immediate trial” he agreed to "go along respecting your [the prosecutor’s] priorities.” The case was adjourned to December 18. On that date the prosecutor was still not prepared to reach the defendant’s case and it was adjourned to January 8, 1973. However the defendant argued that if he could not be granted a trial he should at least have his bail reduced. Over the District Attorney’s objection the court granted the motion and reduced the bail to $15,000.
This pattern was repeated twice in January, once in February, and again on March 20, 1973 with one variation. In January the court reduced bail to $10,000 but since the defendant was unable to raise this amount he remained in custody. On March 26, 1973 the defendant moved to dismiss the indictment claiming that he had been denied a speedy trial. After reciting the history of the case, he also alleged *275 that during the delay an important defense witness had left the area and could not be found. Denying the motion without a hearing, the court held that "the defendant cannot truthfully say that he was prepared to go to trial” before June 12, 1972—the date the court signed the order appointing an investigator for the defendant. Regarding the delay occurring after that date the court held that it "does not constitute such a long delay under the circumstances as to warrant a dismissal for lack of prosecution.” The court also noted that the case was scheduled for trial on April 26, 1973 and "[i]f the defendant is not given a trial within 30 days after that time, absent a valid reason for delay, counsel will be on extremely firm ground to obtain a dismissal of the indictment.”
Nevertheless on April 26 the trial prosecutor was engaged on a different case and he requested, through another assistant, that the defendant’s trial be adjourned to May 11. Although defense counsel objected stating, as he had in the past, that he was ready now to try the case, the court granted the adjournment. Once again defense counsel, joined by the defendant, appealed for a bail reduction noting that the defendant had been incarcerated for over a year; that both he and his wife were suffering from the strain and that the delay, coupled with his incarceration, had "handicapped” the defense. He informed the court that "A very important witness who saw the altercation since moved from the area and the defendant feels if he’s out on bail he’ll do everything he can to trace this very, very important witness. He can’t do it while he’s incarcerated and its hurting him immeasurably by being incarcerated and not being given his liberty on reasonable bail.” The application was denied.
Predictably the same thing occurred on May 11, May 25 and June 11, 1973. Finally on July 2, 1973 the defendant appeared in court and agreed to plead guilty to manslaughter in the second degree because, as he stated at the time, "I have no other alternative. I would like it known to the court due to incarceration so long I have lost witnesses, valuable witnesses * * * So I have no other alternative but to take the plea.” He was subsequently sentenced to 10 years’ imprisonment.
He appealed to the Appellate Division claiming that the conviction should be set aside, and the indictment dismissed because he had been denied a speedy trial, but that court affirmed without opinion.
The speedy trial guaranteed by statute and the Federal *276 Constitution serves three primary purposes: "It protects the accused, if held in jail to await trial, against prolonged imprisonment; it relieves him of the anxiety and public suspicion attendant upon an untried accusation of crime; and finally, like statutes of limitation, it prevents him from being 'exposed to the hazard of a trial, after so great a lapse of time’ that 'the means of proving his innocence may not be within his reach’ —as for instance, by the loss of witnesses or the dulling of memory” (People v Prosser, 309 NY 353, 356; see, also, United States v Marion, 404 US 307, 320). But the guarantee also serves a broader, more public, purpose for society too has an interest in seeing that those accused of crimes are swiftly brought to justice (Barker v Wingo, 407 US 514, 519; People v Minicone, 28 NY2d 279, 281; People v Blakley, 34 NY2d 311, 314, 315). Unless criminal accusations are promptly tried, those disposed to crime can always hope to beat the system by pleading to a lesser offense, those indicted for crimes are left at large for long periods perhaps to further menace the community and those convicted of crimes are often sent to correctional institutions long after the time for meaningful rehabilitation has passed. (See, e.g., Barker v Wingo, supra, at pp 519, 520.) Thus the speedy trial requirement not only ensures fair and humane treatment of the accused, but serves, as well, to promote the efficiency of the criminal justice system.
In People v Taranovich (37 NY2d 442, 445) this court identified five factors to be considered in determining whether the requirement has been met. They are: "(1) the extent of the delay; (2) the reason for the delay; (3) the nature of the underlying charge; (4) whether or not there has been an extended period of pretrial incarceration; (5) whether or not there is any indication that the defense has been impaired by reason of the delay.” In addition it was noted that no one factor or combination of factors is decisive and that all must be weighed together in light of the purposes served by the speedy trial rule.
Here 18 months elapsed between the defendnat’s arrest and his plea of guilty. Only one adjournment—30 days following the appointment of the investigator—can be attributed to the defendant and that period obviously "played no significant part in the total delay” (People v Ganci, 27 NY2d 418, 422). The defendant was incarcerated throughout the entire period and apparently an eyewitness, who might have been able to *277 support the claim of self-defense, disappeared in the interim. Thus there has been, at least, a questionable period of delay (see, e.g., People v Ganci, supra; People v Minicone, 28 NY2d 279, 281, supra), highlighted by the defendant’s extended incarceration and given added significance by the fact that there is some "indication” in the record that the defense has been prejudiced by the delay through the loss of a potentially important witness. In addition, the record shows that throughout most of the period the defendant tried virtually every means to promptly bring his case to trial. Although it is now familiar law in this State that this, in fact, is the prosecutor’s obligation, and that no demand by the accused is required to trigger the obligation (see, e.g., People v Prosser, 309 NY 353, supra; People v Minicone, supra, at p 281) the defendant’s efforts do at least demonstrate his anxiety to have the pending charges promptly and finally resolved.
In sum, in this particular case, the 18-month delay between arrest and disposition seems to have frustrated most, if not all, of the goals the speedy trial requirement was designed to achieve. Nevertheless the People argue that these factors are outweighed by the seriousness of the crime and the fact that the delay was primarily attributable to "case backlog in the District Attorney’s office.”
In Taranovich (37 NY2d 442, 446, supra) this court held that the nature of the crime is relevant because "the prosecutor may understandably be more thorough and precise in his preparation for the trial of a [serious felony] than he would be in prosecuting a misdemeanor”. In other words what may be considered an unreasonable delay in preparing a minor, relatively common street crime for trial may be tolerable when a serious or complex charge is involved (see, e.g., Barker v Wingo, 407 US 514, 531, supra). However this factor is of little significance here because preparation of the case for trial contributed very little, if anything, to the overall delay. On the contrary, the prosecutor repeatedly informed the court that he, like the defendant, was ready for trial and "[i]f this were the next case, the People would try it.” The delay then cannot be attributed to the needs of preparing a serious charge for trial, but rather to the prosecutor’s unrelenting pursuit of his own priority system supported by the court’s acceptance of those priorities as part of its own Trial Calendar. Presumably this reflects a heavy case load, and a shortage of trial attorneys in the prosecutor’s office. The People, *278 relying primarily upon People v Ganci (27 NY2d 418, supra) urge that this alone "may be sufficient justification for delay and thus, defeat a speedy trial claim”.
Initially we note that it is not quite clear what type of priority system the District Attorney was following. It appears that he was simply trying "jail cases” in chronological order, disposing of older indictments first. As far as this record shows, no consideration was given to the fact that the defendant was not charged with a predatory crime, the evidence of guilt was not overwhelming, the defense asserted raised a genuine issue for trial and that the defendant’s case depended upon proof which was peculiarly susceptible to erosion by the mere passage of time. Such an unrefined priority system, taking into account only the date of the indictment and the incarceration of the accused, falls short of demonstrating that the delay in reaching this particular case for trial was due to a shortage, rather than a mismanagement, of personnel. However for the purposes of this appeal we have assumed what was apparently assumed below—that the prosecutor was following a reasonable priority system and that the delay was caused by a shortage of trial attorneys in the prosecutor’s office.
In People v Ganci (27 NY2d 418, supra) this court drew a distinction between delays attributable to "some failure or inadvertence” on the part of the prosecutor, and those caused by the "failure of the State and local governments to provide services and facilities rapidly enough to keep apace with the volume of crime” (p 423). Although we recognized that a shortage of trial facilities "is not a categorically complete answer to the need for prompt trial” (p 423), we held that it constituted "good cause” for a delay of 16 months.
This distinction was noted again in People ex rel. Franklin v Warden (31 NY2d 498) where we affirmed the dismissal of several writs of habeas corpus brought by defendants who, because of calendar congestion, had been incarcerated for over six months—eight months at the time of appeal—awaiting trial on indictments charging various crimes of violence. However we directed that they be granted a preference and tried within three months unless there was some valid reason unrelated to lack of public facilities.[3]
*279 It should be evident, particularly from our disposition in the Franklin case, that the distinction originally recognized in Ganci was not based on the assumption that the State should never be held responsible for delays caused by its failure to provide adequate public facilities or personnel. On the contrary, since the State initiates the action, it is the State’s duty to see that the defendant is promptly brought to trial (see, e.g., People v Prosser, 309 NY 353, 358, supra), and whether the delay is an intentional effort to hinder the defense or merely the result of public inattention to the needs of the trial process, the responsibility must ultimately rest on the State. The only consequence of the distinction then is that a delay occasioned by inadequate facilities or personnel weighs less heavily against the State—because it furnishes a more neutral reason—than one wholly subject to the prosecutor’s control (see, e.g., Barker v Wingo, 407 US 514, 531, supra). But the ultimate solution, as we noted in Franklin, lies with the State and local governments to allocate sufficient public resources to ensure that the ever increasing criminal case load does not overwhelm the courts and prosecutors.[4]
Thus the fact that the delay here was due to a shortage of personnel in the prosecutor’s office, while not exactly a factor in the State’s favor, must weigh less heavily than would most other causes. If that were the only factor favoring dismissal, there would be a close question as to whether this particular delay was consistent with the speedy trial requirement, bearing in mind, as we have in the past, that the 16 months allowed in Ganci "seems to have approached the excusable *280 limit of delay attributable to the absence of public trial facilities” (People v Minicone, 28 NY2d 279, 281, supra). What is certain however, is that this factor cannot "outweigh” the fact that the defendant has been incarcerated for 18 months awaiting trial, that he repeatedly sought a speedy trial and that the record indicates that the delay has prejudiced his case—all of which, although absent in Ganci, is present here.
The order of the Appellate Division should be reversed and the indictment dismissed.

. Although the defendant voiced no objection to the setting of the May 2 date, this was only after the court had granted the request of the District Attorney for the adjournment. The concurrence with respect to the date fixed by the court should not be considered as an acquiescence with respect to the granting of the adjournment.

. Since the defendant had made this motion soon after arraignment, the delay in granting it should not be attributed to the defendant; nor in our view does it detract from his statement that he was ready for trial.

. We recognize that in Franklin the defendants claimed that they were entitled to mandatory dismissal under CPL 30.30 since, in their view, calendar congestion made it impossible for "the People” to be "ready for trial” within the six months prescribed *279 by the statute. That statute is not applicable here since the defendant was charged with murder (see CPL 30.30, subd 3, par [a]) and in addition was indicted prior to the effective date (April 28, 1972). However we note, as we did in Franklin, that the right to a speedy trial does not depend entirely on CPL 30.30 but rests on a broader base (US Const, 6th Arndt; Civil Rights Law, § 12; CPL 30.20).

. The courts of course can still do much with existing resources to alleviate the problem, particularly by more active use of their inherent power over Trial Calendars, preferences (see, e.g., CPL 30.20, subd 2) and the like. And we note that the Judicial Conference has recently taken the initiative by establishing new priorities and guidelines which will, for instance, abandon the "traditional” notion that the courts’ responsibility is simply "to provide the opportunity for a trial at such times as all of the parties are ready.” Instead "the courts * * * must now insist that a trial take place or the case be otherwise disposed of’ within specified time limits—six months in the case of an indictment. Under this guideline it will, quite properly, be the court’s priorities and not the priorities of counsel which will determine when a case, particularly a criminal case, should proceed to trial, and the problems evident here should not recur.