■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v BERNARD MOORE, Appellant.—Judgment, Supreme Court, Bronx County, rendered March 26, 1975, convicting defendant, after a jury trial, of manslaughter in the second degree, affirmed. Final determination of this appeal was held in abeyance pending the result of a hearing by the trial court as to whether there was, in fact, a lack of a speedy trial (59 AD2d 602). At the conclusion of such hearing, the trial court determined that defendant had not been deprived of a speedy trial. We agree. "The following factors [are] examined in balancing the merits of an assertion that there has been a denial of defendant's right to a speedy trial: (1) the extent of the delay; (2) the reason for the delay; (3) the nature of the underlying charge; (4) whether or not there has been an extended period of pretrial incarceration; and (5) whether or not there is any indication that the defense has been impaired by reason of the delay" (People v Taranovich, 37 NY2d 442, 445; see, also, Barker v Wingo, 407 US 514). At the outset it is noted that no actual prejudice to defendant attributable to the pretrial delay is advanced, and the absence of a showing of actual prejudice is conceded. The duration of the delay, here 18½ months, is important, but "as crucial as the length of the delay may be, [the Court of Appeals] has steadfastly refused to set forth a per se period beyond which a criminal prosecution may not be pursued (People v Prosser, 309 N Y 353, 360)" (People v Taranovich, supra, p 445). Of the 18½ months' delay, approximately 13½ months are chargeable to the People. Trial Term observed that "The People's explanation was that under its priority system of trying the oldest cases first, that is, those defendants who were incarcerated for the longest period of time, in accordance with the directive of the Supervising Justice of the Supreme Court, Bronx County, it had no alternative but to dispose of cases involving defendants who were incarcerated prior to this defendant * * * The defendant was charged with a serious, heinous crime—murder, where the evidence of guilt was reasonably certain; in which no claim had been asserted by the defense that the delay was tactically motivated by the People to gain an advantage; where there has been no showing of any actual prejudice caused by 'lost' witnesses or erosion

of memory by the passage of time; and where there has been no significant demonstration 'that the delay impaired his defense' *(People v. Perez,* 42 N Y 2d 971; *cf. People v. Johnson,* 38 N Y 2d 271)." Testimony elicited from the Chief of the Homicide Bureau who was responsible for the assignment of cases for trial in the District Attorney's office demonstrates that the priority system employed was not beset by a fatal intransigence and rigidity, but functioned in an orderly and reasonable manner. There is no absolute prohibition against utilization of a priority system. Indeed, in *People v Imbesi* (38 NY2d 629, 632), the Court of Appeals indicated that a reasonable priority system, especially in the absence of a showing that defendant was harmed by the delay, is permissible. The absence of any impairment of the defense attributable to the delay, viewed against the other balancing factors, warrants the conclusion, on this record, that there was no deprivation of the right to a speedy trial (see *People v Perez,* 42 NY2d 971). Concur—Lupiano, J. P., Silverman and Lane, JJ.; Sandler, J., dissents in a memorandum as follows: On this appeal from a judgment of the Supreme Court convicting defendant after a jury trial of manslaughter in the second degree this court in a memorandum decision previously held that there had been no reversible error in the trial of the case. However, as to defendant's contention that he was denied the right to a speedy trial, "which claim may have merit," the matter was remanded to a trial court for a hearing "as to the reasons for the adjournments of defendant's case and whether there was a lack of speedy trial." A hearing was thereafter held by the Trial Judge who determined that the defendant had not been denied a speedy trial. In a written opinion, the Trial Judge noted that the defendant, arrested on July 20, 1973 had been incarcerated for some 18½ months prior to his trial, and that the District Attorney was chargeable with the last 13½ months of that period. The primary reason for the delay was attributed to a processing of cases under a system of chronological priority promulgated by the supervising Justice of the criminal branch of the Supreme Court, Bronx County, which had directed the District Attorney's office to dispose of the older cases first based on a defendant's length of incarceration. Some delays, it was observed, were also due to engagements in other trials by Assistant District Attorneys, unavailability of court facilities, and an occasional engagement by defendant's counsel. The circumstance that some cases involving defendants incarcerated after the defendant were tried before his, including homicide trials, was evaluated as evidence of the system's flexibility. The trial court acknowledged that the clogging of the Trial Calendars and the institution of a priority system did not relieve either the District Attorney or the courts of their constitutional obligation to provide the defendant a speedy trial. Nonetheless, under all the circumstances, it was held that the defendant's constitutional rights had not been infringed. A brief review of the facts bearing on the homicide is a necessary preliminary to an understanding of the speedy trial issue here presented. The deceased had first commenced an argument with the defendant in a park, which he thereafter resumed in an apartment, when he punched the defendant, knocking him to the ground. The two men were asked to apologize and leave the apartment. The defendant did leave but returned to retrieve a sweater he had left behind. After a few minutes, the principal witness to the event, who had left the apartment momentarily, returned and observed the defendant and the deceased "hugging." She then saw blood coming out of the mouth and nose of the deceased and observed the defendant with a kitchen knife in his right hand and the blade in the chest of the deceased. Another witness claimed to have observed the respondent twisting the knife in the chest of the de-

ceased, but this testimony was inconsistent with the findings of the medical examiner. The defendant testified that the deceased had resumed the argument, abused him, threatened him with a kitchen knife, and attempted to cut him. The defendant stated that he had caught the deceased by the wrist, and during a struggle, the knife dropped to the ground where the defendant retrieved it. The deceased then, according to defendant, kneed him, and as he was kicked, the defendant's hand "just shot forward * * * it wasn't a forward thrust that I really put power behind it". The defendant was cross-examined in large part on the basis of discrepancies between his trial testimony and a statement previously given to an Assistant District Attorney in which he disclaimed knowing whether anyone had been stabbed in the apartment, stated that he was in the kitchen for 20 minutes before the deceased entered, observed "a flash of something, a knife coming * * * and [he] grabbed for it" and did not know who had the knife or whether he had gained control of it. This statement was taken under disturbing circumstances. On July 20, 1973, the defendant was found unconscious as a result of an unrelated assault and taken to a hospital where he was apparently arraigned the following day on the homicide and counsel assigned. On his release from the hospital he was taken to the District Attorney's office where a statement was taken in the absence of counsel by an Assistant District Attorney in what appears to have been not only a gross violation of his constitutional rights but, if the fact of the arraignment were known, a clear breach of professional ethics. *(People v Hobson,* 39 NY2d 479; DR 7-104.) The factors to be examined in balancing the merits of an assertion that there has been a denial of a defendant's right to a speedy trial were set forth in *People v Taranovich* (37 NY2d 442), and have been consistently reaffirmed. They are (p 445): "(1) the extent of the delay; (2) the reason for the delay; (3) the nature of the underlying charge; (4) whether or not there has been an extended period of pretrial incarceration; and (5) whether or not there is any indication that the defense has been impaired by reason of the delay." Applying these factors to the instant case, a reversal seems to me clearly indicated. 1. The extent of the delay—18½ months—is substantial and of a duration that, depending on other factors, supports a finding of violation. (Cf. *People v Johnson,* 38 NY2d 271.) 2. The reason for the delay as found by the trial court, an overcrowding of calendars resulting in a priority system, is clearly by itself not sufficient to avoid the application of the constitutional rule. (See *People v Johnson, supra.)* Moreover, the circumstance that a number of homicide trials of defendants arrested after this defendant were tried before his, although found by the trial court to be evidence of flexibility, may more reasonably be considered an aggravating circumstance in the absence of any satisfactory explanation. The record makes quite clear that there had been a succession of prosecutors assigned to the case in the intervening period and that these changes of assignments may well have contributed substantially to the delay that occurred. It is clear that the defendant repeatedly requested an early trial. The varying and contradictory responses to these requests for a trial raise disturbing questions not satisfactorily answered in the hearing below. Thus, as early as April 16, 1974, in response to a defense application, the Trial Judge set May 14, 1974 as the adjourned date and instructed that "the supervising Assistant District Attorney assign an assistant to the case and make them aware that you are ready and able to proceed to trial." Six months later, on October 15, 1974, an Assistant District Attorney informed the court that he had spoken to the new assistant just assigned to the case who said "He is not ready. He hasn't interviewed witnesses in this case." On June 17, 1974,

an Assistant District Attorney asserted that the People were ready, and assured that the District Attorney could go to trial in late July. The case was adjourned to July 23, 1974. On that date, the Assistant District Attorney stated that the case could not be reached for the next couple of months but "we certainly can give him one in September." For a mix of reasons involving both sides, that date proved not feasible. However, on October 1, when both prosecutor and defense counsel were engaged in another trial, November 15 was agreed on as a trial date, the court making the case "preemptorily ready for trial." The matter was advanced to October 15 because of a directive limiting adjournments to no more than two weeks at a time on which date the District Attorney claimed that the case "should never have come up to a trial part in the very first instance * * * Mr. Phillips, whose case it is, wasn't ready yet * * * how it got on the trial calendar is a mystery to us." On November 15, the District Attorney claimed that Assistant District Attorney Phillips was "to start trial in an older matter." On January 8, 1975, the court stated that a new Assistant District Attorney, a James F. Shalleck, had been assigned to the case and had told the court he was "beginning to investigate it." February 4, 1975 was then agreed to as the trial date, and the case was then tried by still another assistant. The totality of these events seem to me substantially more objectionable than those that led to a dismissal in *People v Johnson* *(supra)*. 3. As to the nature of the underlying charge, it is true that the defendant was charged with murder. However, unlike *People v Perez* (42 NY2d 971), relied upon in the opinion of the court, this was not a case that "necessitated a slow and careful preparation". The trial was of the simplest possible kind. There were literally no disputed issues of any consequence other then those raised by the defendant's testimony that he had been attacked by the deceased with a knife, which was not contradicted by any witness, and was in no way inconsistent with any objective or physical fact. 4. As to the fourth factor listed above, length of pretrial incarceration, some 18½ months in jail before trial is shocking by any standard and sharply distinguishes this from the cases heavily relied upon by the District Attorney. *(People v Imbesi,* 38 NY2d 629; *People v Kelly,* 38 NY2d 633.)* 5. Finally, as to whether "there is any indication that the defense has been impaired by reason of delay," it is true that here, unlike *People v Johnson* *(supra),* to which this case is in almost every respect similar, there is no claim that a defense witness was allegedly lost by reason of the delay, although the *Johnson* opinion did not disclose any confirmation of that defense claim. But a defense can be impaired in more ways than by the loss of a witness. That memories may fade with the passage of time is a matter of common experience. Normally, passage of time is more harmful to District Attorneys whose witnesses are less likely to be precise in their recollection after an extended period of time. In this case, the critical witness, the witness whose credibility presented the primary issue, was the defendant himself. And it seems obvious that his ability to present a convincing account of events that he claimed occurred and which was not directly contradicted by anyone was inevitably impaired by the fact that he had spent some 18½ months in jail since the date of his arrest. This defendant was convicted of a nonintentional homicide under circumstances that imply, at least in part, a jury disbelief of his credibility with regard to testimony that was not inherently improbable nor explicitly contradicted by anyone and that was challenged primarily by the use of a statement taken by an Assistant District Attorney after the defendant had been arraigned and assigned counsel in violation not only of his constitutional rights but of

the District Attorney's professional obligations. And this trial of a defendant with a viable defense, resulting in what has the appearance of a compromise verdict, occurred after he had been incarcerated in violation of his basic rights for 18½ months. The judgment of conviction should be reversed and the indictment dismissed.