THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v LOUISE WHITE, Appellant. (Appeal Nos. 1 and 2.)

THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v JOSEPH BROWN, Appellant. (Appeal No. 3.)

THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v FRANK WILLIAMS, Appellant. (Appeal No. 4.)

Fourth Department, July 9, 1981

APPEARANCES OF COUNSEL

*Rose H. Sconiers (Joseph Shifflett* of counsel), for appellants.

*Edward C. Cosgrove, District Attorney (Joseph Matteliano* of counsel), for respondent.

OPINION OF THE COURT

HANCOCK, JR., J.

In prior decisions *(People v Brown,* 75 AD2d 718; *People v Williams,* 75 AD2d 717; *People v White,* 72 AD2d 913) we found that none of the alleged errors committed during trial warranted reversal of defendants' convictions for murder in the second degree and other crimes.[1] We held the appeals, however, and remitted the cases to Erie County Court (WOLFGANG, J.) for the purpose of conducting an evidentiary hearing and making findings of fact in connection with the single issue in all three cases on which decision was reserved: whether considering the factors set forth in *People v Taranovich* (37 NY2d 442, 445) defendants had been denied their constitutional rights to a speedy trial. With the record of the hearing and County Court's findings before us, we must now decide if the delay in each case warrants a reversal and dismissal of any of the charges.

The convictions stem from the killing of Ozell Williams on December 24, 1974. Shortly before the trial of the three defendants was scheduled to commence in September of 1978, the court granted a severance on motion of defendants Brown and Williams and the prosecution proceeded against Louise White as sole defendant in a jury trial beginning on September 22, 1978 and ending on October 6, 1978. The joint trial of Brown and Williams followed on November 14, 1978 and concluded in a verdict on December 1, 1978.

From the account given at the two trials by the only eyewitness to the criminal conduct, Debra Ann Robinson, the murder of Ozell Williams was a planned execution. The motive was retribution for Ozell Williams' part in a robbery on December 20, 1974 in which defendant Frank Williams and his girlfriend, defendant Louise White, had lost $500

---

1. White was convicted of attempted murder, second degree, murder, second degree, and criminal possession of a weapon, second and fourth degrees. Williams and Brown were each convicted of murder, second degree, and criminal possession of a weapon, fourth degree.

and some jewelry. (Ozell Williams was not related to Frank Williams but had worked for him in Frank Williams' "numbers operations.")

On the evening of December 23, the witness Debra Ann Robinson, Louise White and Frank Williams were at Williams' apartment when the victim, Ozell Williams, telephoned. A meeting was arranged, ostensibly to discuss the help that Ozell Williams might give in recovering the stolen property. Following the meeting at a bar later that night, Louise White and Frank Williams, assisted by his nephew, defendant Joseph Brown, forced Ozell Williams into a car at gunpoint and took him to the Erie Basin Marina, administering a beating with fists and a pistol on the way. Outside the car at the marina, White, after extinguishing a cigarette on the victim's head, fired several rounds from her pistol into his legs. When he promised to find the robbers, White stopped shooting. Ozell Williams hobbled back into the car. Defendants drove him around searching without success for the guilty parties while he begged for more time and for his life, even, at one point, offering his mother as a hostage until the robbers could be found. After stopping at defendant Frank Williams' house to get two rifles, the abductors, heedless of the continued pleas of their prisoner, took him back to the Erie Basin Marina where they put him to death. The postmortem examination revealed that Ozell Williams had been shot 15 times, once in the face, seven times in the chest, four times in the legs, twice in the arm and once in the back, and that bullets had lodged in the spinal column, lacerated the aorta, and perforated the heart and lungs. A police officer assigned to the evidence collection unit testified that the next day when the body was discovered, he recovered from the area over 30 live and spent .22 caliber and .25 caliber cartridges and cartridge casings.

We have rejected White's arguments that the court should have charged as a matter of law that Debra Ann Robinson was an accomplice and that the court's charge with respect to accomplice testimony presented a basis for reversal, noting that these claimed errors were not preserved for appellate review. We observe that, even if the testimony of Debra Ann Robinson was that of an accomplice, it was sufficiently corroborated by other witnesses, par-

ticularly the bartender who observed her in the company of the victim and the defendants and a witness who saw White and the other defendants forcing the victim into the car. We found no ground for reversal in the prosecutor's summation. In the *Williams* and *Brown* appeals, we saw no reversible error in the court's marshaling of the evidence on the accomplice question, in the court's receipt in evidence of the statement of Debra Ann Robinson on redirect testimony, in its denial of defendant Williams' request for a separate nonjury trial, or in its denial of defendants' request for a special verdict regarding Debra Ann Robinson's status as an accomplice.

Based on the hearing and the findings, we conclude for reasons hereinafter stated that the judgments of conviction should now in all respects be affirmed.

### I.

Although the body of Ozell Williams was discovered on December 24, 1974, no arrests were made until almost 22 months later when Debra Ann Robinson came forward on October 22, 1976 and gave a statement directly implicating all three defendants. Judge WOLFGANG made a finding, which we accept, that without the Robinson statement there was not sufficient evidence to support an arrest.[2] We briefly summarize the investigation and the criminal proceedings following the taking of the statement on October 22, 1976, as developed in the testimony at the hearing and as found by Judge WOLFGANG.

Louise White was indicted on December 9, 1976 following the appearance before the Grand Jury of Debra Ann Robinson on December 3, 1976. On December 13, 1976 White was arrested and arraigned, and defense counsel requested an adjournment. The trial commenced on September 22, 1978, after two days of hearings, approximately 21½ months after indictment. During this period she was never released on bail.

---

2. Defendants do not argue that they were denied due process by the 23-month lapse between the crime and the indictments. Where, as here, a delay in indicting a defendant is due to the need to discover the offender and to gather sufficient evidence to secure an indictment, there is no due process deprivation (see *People v Singer*, 44 NY2d 241, 254).

The following events and time periods during the 21½ months while defendant White was awaiting trial are significant. White's pretrial motions were made on January 28, 1977 and decided on February 14, 1977, two months after arraignment. On April 27, 1978 she moved to dismiss the indictments on speedy trial grounds. That motion was denied on May 9, 1978, almost two weeks later.

From September 23, 1977 until March 20, 1978 the District Attorney's office and the police were engaged in an effort to secure the attendance of Debra Ann Robinson as a trial witness. On August 26, 1977 the prosecution issued a subpoena returnable on September 1, 1977. A material witness warrant was obtained on September 23, 1977 which was finally served on Debra Ann Robinson on March 20, 1978.

The police initially arrested Frank Williams on October 24, 1976 and Joseph Brown on October 25, 1976. Their joint trial commenced approximately 24½ months later, on November 14, 1978.

After their first arrest, Williams and Brown requested a preliminary hearing which was conducted on October 29, 1976, and both were released on bail on November 4, 1976. They were indicted along with White on December 9, 1976, and arraigned on December 29, 1976. As did White, they made pretrial motions which were decided on February 14, 1977. Williams and Brown, who had been rearrested and recommitted after their arraignment, posted bail again on February 22, 1977 and were released.

Other than the posting of bail by Brown and Williams on February 22, 1977, the reduction of White's bail on April 22, 1977, and the filing of a bill of particulars on August 12, 1977, there is no evidence of any specific activity in the case between February 14, 1977, the day of the decision of defendants' pretrial motions, and August 26, 1977, the date the Assistant District Attorney sent out a subpoena for Debra Ann Robinson, a total of six and one-half months. The hearing court observed that during that period the Assistant District Attorney handling the case "did little if anything to prepare the case and bring the matter to trial."

After procuring the material witness warrant on September 23, 1977, the prosecutor testified, he conferred "periodically" with the police "as to whether they had located Debra Ann Robinson." In uncontradicted testimony regarding their efforts to serve the material witness warrant, Buffalo Police Lieutenant Pantano and his then partner, Detective Suszek swore that during the six-month search for Debra Ann Robinson, they made "dozens" of attempts to locate her. Robinson's mother provided them with two addresses: 187 Cherry Street (the address Debra Ann Robinson had given on October 22, 1976) and 293 Mortimer Street. They stopped and knocked at the door of the Cherry Street apartment "a dozen" or "two dozen" times, talked to the people who lived upstairs, contacted the mailman, posted a watch and inquired at the Mortimer Street address a dozen or two times and left cards with the tenants. They "put the word out on the street that [they] were looking for Debra," requesting assistance from the vice squad and from police officers patrolling the areas which Robinson was known to frequent as a prostitute. None of the many tips and leads they tracked down, including an address obtained from the Erie County Department of Social Services, proved helpful. It was not from any of their usual sources but through a chance tip received from an informant that they finally located and arrested Debra Ann Robinson on March 20, 1978 at 324 Franklin Street, a location the police had not known of.

From the service of the material witness warrant on March 20, 1978 until the commencement of the White trial, the following occurred: On April 27, 1978 White made her motion for a dismissal on speedy trial grounds which was denied on May 9, 1978. Williams and Brown moved for dismissal on speedy trial grounds on May 25, 1978 and their motions were denied on the same day. An order to show cause was obtained by the District Attorney's office on June 7, 1978 for the purpose of obtaining permission to file an amended CPL 710.30 notice of intention to offer at trial pretrial identifications of White and Brown. On June 20, 1978 the court granted permission to file the amended notice and set the three cases down for joint trial in September, 1978. Upon motions by White and Brown

for suppression of the pretrial identifications, by White for suppression of her October 9, 1976 statement, and by Brown and Williams for severance of their trials from White's, the court on September 15, 1978 ordered *Wade (United States v Wade*, 388 US 218) and *Huntley (People v Huntley*, 15 NY2d 72) hearings and granted severance. Brown's and White's *Wade* hearing took place on September 19, 1978 and White's *Huntley* hearing on September 20, 1978. After it had denied all suppression motions on September 21, 1978, the court proceeded with the White trial on the following day. White was convicted on October 6, 1978 and sentenced on November 6, 1978. Williams' and Brown's trial began November 14, 1978 and resulted in their convictions on December 1, 1978.

## II.

In New York a defendant's right to a speedy trial stems from the Constitution of the United States (US Const, 6th and 14th Amdts; see *Barker v Wingo*, 407 US 514, 515; *Dickey v Florida*, 398 US 30, 37-38) and from statute (CPL 30.20; Civil Rights Law, § 12). A finding that this right has been infringed requires a dismissal of the indictment (see *People v Taranovich*, 37 NY2d 442, 444, *supra)*. While the application of the rules in deciding a motion to dismiss the indictment on constitutional speedy trial grounds may pose difficulties, the rules themselves are clearly stated in *People v Taranovich (supra*, pp 444-445):

"[T]here is no specific temporal duration after which a defendant automatically becomes entitled to release for denial of a speedy trial * * * Instead, the assertion by the accused of his right to a speedy trial requires the court to examine the claim in light of the particular factors attending the specific case under scrutiny * * * [T]here are no clear cut answers in such an inquiry, and the trial court must engage in a sensitive weighing process of the diversified factors present in the particular case. Moreover, the various factors must be evaluated on an *ad hoc* basis since no rigid precepts may be formulated which apply to each and every instance in which it is averred that there has been a deprivation of the speedy trial right * * * Addi-

tionally, we hasten to add that no one factor or combination of the factors set forth below is necessarily decisive or determinative of the speedy trial claim, but rather the particular case must be considered in light of all the factors as they apply to it * * *

"The following factors should be examined in balancing the merits of an assertion that there has been a denial of defendant's right to a speedy trial: (1) the extent of the delay; (2) the reason for the delay; (3) the nature of the underlying charge; (4) whether or not there has been an extended period of pretrial incarceration; and (5) whether or not there is any indication that the defense has been impaired by reason of the delay."

We are mindful of the Court of Appeals admonitions in *Taranovich (supra,* p 445) that each case requires "a sensitive weighing process of the diversified factors" and that the court "has steadfastly refused to set forth a per se period beyond which a criminal prosecution may not be pursued". We cannot, therefore, expect any clear-cut guidelines to emerge from a study of the cases; nevertheless, a brief recital of the controlling facts in *Taranovich* and in subsequent decisions of the court applying the *Taranovich* rules may be helpful.

In *People v Taranovich (supra)*, where the court found no infringement of defendant's constitutional right to a speedy trial, 12 months elapsed from the arraignment to defendant's indictment for attempted murder and first degree assault. During all but eight days of the delay, which was caused by a clerical error in the District Attorney's office, defendant was free on bail. There was no showing of actual prejudice to the defense of the case.

Pertinent decisions following *Taranovich* in which the court held that the indictment should not be dismissed are *People v Perez* (42 NY2d 971), *People v Imbesi* (38 NY2d 629) and *People v Kelly* (38 NY2d 633). In *Perez*, the defendant was confined throughout the 19-month interval between his arrest and trial, a 15 or 16-month portion of which was attributable to the People. The court observed that the crime was an "unprovoked predatory offense" *(People v Perez, supra,* p 972), that the serious nature of

the charge (defendant was arrested for attempted murder) necessitated "a slow and careful preparation of the case" *(People v Perez, supra,* p 971), and that the defendant had not shown that the delay impaired his defense.

*Imbesi (supra)* involved a 21-month delay in bringing the case to trial after defendant who had had a serious operation had convalesced and after several adjournments. The reason for the delay was the priority extended by the District Attorney to cases involving incarcerated defendants. Defendant, charged with attempted rape, had been at liberty for the entire period except three days and made no claim of prejudice.

The court in *Kelly (supra,* p 636) in considering the 27 months between the indictment of defendant for murder and his trial, found that 10 months were due to the physical incapacity of a key prosecution witness, 11 were "caused or acquiesced in" by defense counsel, and 5 were due to involvement of the prosecution in several important cases. No prejudice to defendant was shown and defendant was out on bail for all but six months.

The significant cases in which the Court of Appeals dismissed indictments on speedy trial grounds are *People v Moore* (47 NY2d 872, a 4 to 3 decision revg on dissenting mem in App Div, 63 AD2d 602, 603) and *People v Johnson* (38 NY2d 271). In *Moore,* defendant, charged with homicide, was in jail during all of the 18½-month delay, approximately 13½ months of which could be charged to the People. There was no showing that a witness had become unavailable. However, the dissenter at the Appellate Division observed that while passage of time was usually more harmful to the prosecution, the critical witness for the defense was the defendant himself whose "ability to present a convincing account of events that he claimed occurred and which was not directly contradicted by anyone was inevitably impaired" *(People v Moore,* 63 AD2d, at p 605).

Of the 18 months in the *Johnson (supra)* case between indictment and trial, one month could be imputed to the defense. Defendant, charged with murder, was jailed for the entire period, continuously sought to have his case brought to trial, and claimed that he was forced to plead

guilty because an important defense witness had, during the interim, moved from the area to an unknown location.

### III.

In examining the contentions of defendants in light of *Taranovich* (37 NY2d 442, *supra*) and subsequent cases, we focus first on the first and second *Taranovich* factors— the extent of the delay and the reasons therefor. The interval between White's indictment (December 9, 1976) and the commencement of hearings immediately prior to her trial (September 19, 1978) was 21½ months, two and one-half months of which were due to defense motions (two months from arraignment on December 13, 1976 to disposition of pretrial motions on February 14, 1977 and almost two weeks from the making of a speedy trial motion on April 27, 1978 to denial thereof on May 9, 1978). The period between the initial arrests of Williams and Brown (October 24 and 25, 1976, respectively) and commencement of their trial on November 14, 1978, was slightly more than 24½ months, one and one-half months of which could be ascribed to pretrial motions (December 29, 1976, the date of arraignment, to decision of motions on February 14, 1977) and one and one-half months of which were due to White's trial (September 19, 1978, the commencement of the hearings, to sentencing on November 6, 1978)[3] from which Williams and Brown had obtained a severance and during which they could not be tried. If, as the People claim, the six months during which Debra Ann Robinson could not be found should not be charged to the prosecution, the delay in White's case (excepting the periods during which defense motions were made and during which Debra Ann Robinson was sought) is reduced to 13 months and in Williams' and

---

3. Williams' and Brown's severance motions were granted September 15, 1978; White's hearings immediately prior to trial began on September 19, 1978; her trial ended on October 6, 1978; and she was sentenced on November 6, 1978. Williams' and Brown's trial began November 14, 1978. The same Assistant District Attorney handled both trials. Obviously Williams and Brown, because they had obtained severance, could not be tried during White's trial or immediately thereafter; a reasonable interval was required to prepare for the second trial. Therefore, particularly in view of the fact that Williams and Brown were out on bail, we excuse with respect to them the one and one-half months required to try and sentence White.

Brown's (excepting the time attributable to defense motions, White's trial, and the search for Debra Ann Robinson) to 15½ months.

Before deciding the question of whether that six-month period should be imputed to the People, we observe first that we agree with Judge WOLFGANG's finding that the People exercised "due diligence" in the efforts to locate Debra Ann Robinson. Indeed, the uncontradicted testimony of Lieutenant Pantano and Detective Suszek permits no other conclusion. Defendants contend, however, that even though the police proceeded diligently, it is possible that no search would have been necessary if the District Attorney had moved the case for trial sooner or had attempted to contact Debra Ann Robinson at an earlier time and that, therefore, the full six months should be charged to the People. The argument necessarily depends on speculation. There is no reason to believe that Debra Ann Robinson could have been found more easily prior to August 26, 1977 or that, if located, she would not have disappeared again. In view of the facts that even her mother did not know where she lived, that the police had at least five addresses for her and found her at yet another, that finding her required extensive effort, and that she was alleged to have been involved in prostitution, it would be unreasonable to assess the six-month interval to the People on the supposition that there would have been no such delay had the search started sooner (see *People v Kelly*, 38 NY2d 633, *supra*, in which the Court of Appeals affirmed defendant's conviction where injuries to the People's key witness which prevented him from testifying for 10 months occurred after the case was already 14 months old). We also reject as unrealistic defendants' suggestion that the Assistant District Attorney was obliged to try these vicious homicide cases in the absence of the crucial prosecution witness by reading into evidence her testimony at the preliminary hearing despite the obvious risks to a successful prosecution inherent in such a procedure.

In sum, we conclude that Louise White was not deprived of her constitutional right to a speedy trial. While the total time of her confinement prior to trial was 21½ months, only 13 months of that time can reasonably be charged to

the People,[4] less than the 15 to 16-month period in *People v Perez* (42 NY2d 971, *supra*). No one would suggest that the charges against Louise White, including two charges of murder, were not grave or that her part in the detaining, beating, shooting, and ultimately the killing of Ozell Williams could not be characterized under *Perez* as an "unprovoked predatory offense" *(People v Perez, supra*, p 972). White did not testify, called no witnesses, and made no showing of actual prejudice. In this respect, the case is distinguishable from *People v Moore* (63 AD2d, at p 605) in which the court found that the ability of the defendant to testify convincingly had been impaired by the delay.

Williams' and Brown's appeals present even stronger cases for affirmance. The total delay in their cases was 24½ months, for 15½ of which there appears to be insufficient reason.[5] The defendants spent only two and one-half months in jail (see *People v Kelly*, 38 NY2d 633, *supra*, where, of a total period of 27 months, defendant was free on bail for all but six months; *People v Imbesi*, 38 NY2d 629, *supra*, involving a delay of 21 months during which defendant was jailed for only three days). There can be no question about the serious nature of the charges. Brown made no attempt to show prejudice. Although Williams at the hearing before Judge WOLFGANG referred in his testimony to a friend with whom he had discussed "the date of the homicide" and who had died in 1978 prior to trial, it does not appear that the friend was a witness or could have offered any helpful testi-

---

4. It is arguable that less time should be assessed against the People because of delay on the part of defendants Brown and Williams in making certain motions. On June 20, 1978, the court granted the People's motion to amend the CPL 710.30 notices to permit, *inter alia*, testimony of pretrial photographic identification of Brown. Brown, however, did not move for a *Wade* hearing in connection with this identification until August 16, 1978, at which time he also made the first of two motions for severance. (He made the second severance motion on September 7, 1978.) Williams moved for severance on September 8, 1978. No reason is given for the delay in Brown's making the *Wade* motion or for his and Williams' delay in making the severance motions which could have been made at any time. Clearly the People could not proceed against any of the defendants until at least the severance motions were decided. We have, however, for purposes of our computation assessed all the time against the People because of their tardiness in amending the 710.30 notices; the amendatory material was all available to the People prior to their service of the original 710.30 notices in 1976.

5. See n 4, p 497.

mony (compare *People v Johnson*, 38 NY2d 271, 275, *supra*). We conclude, therefore, that, as with White, the rights of Williams and Brown to a speedy trial under the United States Constitution and CPL 30.20 were not violated.

The judgments should be affirmed.

SIMONS, J. P., DOERR, DENMAN and SCHNEPP, JJ., concur.

Appeal No. 1.—Judgment unanimously affirmed.

Appeal No. 2.—Judgment unanimously affirmed. Same opinion as in *People v White*, Appeal No. 1, 81 AD2d 486, decided herewith.

Appeal No. 3.—Judgment unanimously affirmed. Same opinion as in *People v White*, Appeal No. 1, 81 AD2d 486, decided herewith.

Appeal No. 4.—Judgment unanimously affirmed. Same opinion as in *People v White*, Appeal No. 1, 81 AD2d 486, decided herewith.