THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v ROBERT MASON, Appellant.—Appeal by the defendant from a judgment of the Supreme Court, Queens County (Rotker, J.), rendered August 26, 1982, convicting him of murder in the second degree (two counts), attempted robbery in the first degree (two counts) and criminal possession of a weapon in the second degree, upon a jury verdict, and imposing sentence. The appeal brings up for review the denial (Agresta, J.), of the

defendant's motion to dismiss the indictment on the ground that he had been denied his constitutional right to a speedy trial.

Ordered that the judgment is reversed, on the law, the motion is granted, the indictment is dismissed, and the matter is remitted to the Supreme Court, Queens County, for the purpose of entering an order, in its discretion, pursuant to CPL 160.50.

In April of 1982, after being incarcerated for a period of over 21 months awaiting trial, the defendant was tried for, and now stands convicted of, murder in the second degree (two counts), attempted robbery in the first degree (two counts), and criminal possession of a weapon in the second degree in connection with the shooting of alleged drug dealer Stanley Yow and his companion James Collins. On January 27, 1982, his speedy trial motion pursuant to CPL 30.20 was denied.

On appeal, the defendant once again presses his contention that the delay in moving his case to trial was unjustifiable and excessive, resulting in the denial of his constitutional right to a speedy trial. We agree and reverse.

A defendant's right to a speedy trial is guaranteed by both the Constitution (US Const 6th, 14th Amends), and by statute (CPL 30.20; Civil Rights Law § 12; *see also, Barker v Wingo,* 407 US 514; *People v Johnson,* 38 NY2d 271, 275; *People v Taranovich,* 37 NY2d 442, 444). The responsibility for protecting the defendant's right to a speedy trial rests with the People *(see, People v Singer,* 44 NY2d 241, 254-255; *People v Minicone,* 28 NY2d 279, 281, *cert denied* 404 US 853; *People v Brown,* 117 AD2d 978, 979). It is well settled that there is no specific temporal duration which automatically foretells the certainty of constitutional deprivation in respect to the denial of a speedy trial *(see, People v Taranovich, supra,* at p 445). Rather, "the assertion by the accused of his right to a speedy trial requires the court to examine the claim in light of the particular factors attending the specific case under scrutiny" *(People v Taranovich, supra,* at p 445; *People v Imbesi,* 38 NY2d 629, 631). The following factors are to be examined in weighing the merits of an assertion that there has been a denial of a defendant's right to a speedy trial: (1) the extent of the delay; (2) the reason for the delay; (3) the nature of the underlying charge; (4) whether or not there has been an extended period of pretrial incarceration; and (5) whether or not there is any indication that the defense has been impaired by reason of the delay *(see, People v Watts,* 57 NY2d 299, 301;

*People v Taranovich, supra,* at p 445). No one factor or combination of factors is decisive; all must be weighed together in light of the purpose served by the speedy trial rule *(see, People v Johnson, supra,* at p 276). Reviewing the circumstances of this case in light of the foregoing criteria, we find that the delay herein was excessive and conclude that the defendant's constitutional right to a speedy trial has been denied.

It is undisputed at bar that following the defendant's arrest in July of 1980 there ensued a lengthy period of delay in excess of 21 months during which time the defendant remained incarcerated while awaiting trial on the charges against him. We reject as inadequate the People's proffered justification of trial strategy as a reasonable excuse for their failure to move the defendant's case to trial promptly. Neither the arrest of the codefendant Michael Robinson some four months after the defendant's arrest nor the People's subsequent decision to try Robinson first—apparently because he had confessed—can provide a legitimate excuse for a delay of the dimension which occurred herein.

The People first argue that the arrest of the codefendant Michael Robinson in November of 1980 added a "potentially new and vital witness to the People's arsenal" and that all their efforts were directed toward the objective of persuading Robinson to testify against the defendant, causing unavoidable delay. We find this vaguely framed contention to be lacking in merit. Any delay justifiably attributable to the trial stratagem of securing the cooperation of Robinson cannot serve as a meaningful counterweight in mitigation of the extensive delays which followed. The People never explained precisely when their negotiations with Robinson commenced and terminated other than to suggest in their brief that their efforts were rebuffed some time prior to the summer of 1981, months after Robinson's arrest, at which time "his case was readied for hearings and trial in the summer and fall of 1981". Moreover, although Robinson's cooperation could not be secured, the People nevertheless decided to delay the defendant's trial and proceed with the prosecution of Robinson's case first, which, in September of 1981, ended with Robinson's acquittal of the intentional murder of which defendant was also accused and the declaration of a mistrial as to the remaining counts in the indictment. At this juncture, some 15 months had elapsed since the defendant's arrest in July of 1980. In support of their decision to accord priority to the trial of Robinson, the People argue that Robinson's inculpatory

statements "led the People to proceed first with the case against him, the accomplice, in order to convict him and eventually use his inculpatory testimony against the shooter, defendant Mason". We reject this contention. Although the People contend that they tried Robinson first so as to make use of his "inculpatory testimony", the People fail to explain how, at the time the decision was made to prosecute Robinson, they could possibly have known that he would testify or that if he did, his testimony would inculpate the defendant. Nor do the People explain precisely how they intended to introduce this anticipated "inculpatory testimony" at the defendant's trial. In fact, Robinson never testified against the defendant.

The record further discloses that the People's conduct subsequent to Robinson's mistrial was anything but expeditious. After Robinson's trial, the People sought to retry him jointly with the defendant. Thus, they abandoned their original strategy which had called for separate trials, despite the fact that the People were aware that Robinson's confession implicated the defendant, thereby creating a *Bruton* barrier to a joint trial. Moreover, after disclosing in September 1981 their intent to seek a joint trial, which was justified as an administrative necessity to avoid repetition and multiple litigation, the People nevertheless delayed in filing papers in support of their application for about six weeks, despite the defense counsel's repeated entreaties that he be informed as to precisely how the People intended to proceed. When the People's motion for a joint trial was finally placed before the court, it was denied. The same pattern of dilatory response characterized the People's delay in replying to counsel's November 23, 1981 speedy trial motion until late December of 1981, despite being ordered by the court to respond prior to December 3, 1981. Thereafter, the trial of the case was further delayed into the winter of 1982, largely because of the unavailability of the Trial Assistant in charge who repeatedly professed his inability to proceed due to his own allegedly overburdened trial schedule.

At one point, the Trial Assistant informed the court that "[t]here is no way we can give everybody a speedy trial unless I cut down on the number of trials we have to do in those cases". Contrary to the People's contentions, these delays were not attributable to court congestion, or to the Assistant's alleged justifiable unavailability due to other engagements, "but rather to the prosecutor's unrelenting pursuit of his own priority system supported by the court's acceptance of those priorities as part of its own Trial Calendar" *(People v Johnson,*

38 NY2d 271, 277, *supra).* Although the defense counsel had indicated his readiness as early as May 6, 1981, and on numerous occasions thereafter, the People belatedly expressed their readiness to proceed in March of 1982, after which the defendant's trial commenced in late April, some 21 months subsequent to his arrest. Immediately prior to the People's statement of readiness, however, the court had warned that if the People were not ready within two weeks it would entertain an application to release the defendant on his own recognizance.

We note that the record belies the People's contention that they were ready for trial after Robinson's mistrial in the fall of 1981. The Trial Assistant appearing on September 28, 1981, who was not the Assistant in charge of the case, and who announced his "readiness" in the absence of the defense counsel, was not, in reality, ready to proceed but rather disclosed the People's intent to seek a joint trial of the defendant with Robinson. We reject, moreover, the People's contention that the defendant was responsible in any significant measure for the delay in pressing this matter to trial *(see, People v Johnson, supra,* at p 277; *People v Ganci,* 27 NY2d 418, 422, *cert denied* 402 US 924; *People v Brown,* 117 AD2d 978, 980, *supra).* Although the defense counsel was briefly unavailable due to actual engagements in Federal court, and certain delays ensued upon counsel's request for the transcript of Robinson's trial, this does not detract from the significant delay which must be attributed to the People in this case. Further, there can be no serious contention made that this case was unduly complex or presented novel questions of law such that a delay of the scope herein can be justified as attributable to necessary pretrial preparation *(see, People v Johnson, supra,* at p 277; *People v Brown, supra,* at p 979).

Finally, the defendant has also alleged that the delay herein resulted in the loss of a potential alibi witness. We note that the defense counsel duly filed a notice of alibi identifying the witness by name as early as September 1980, shortly after the defendant's arrest. Thus, the defendant's extended incarceration and the lengthy period of delay is given "added significance by the fact that there is some 'indication' in the record that the defense has been prejudiced by the delay through the loss of a potentially important witness" *(People v Johnson, supra,* at p 277). We reject as inaccurate, the People's representation on appeal that Justice Agresta's order denying defendant's speedy trial motion "found as a fact" that the

alleged loss of the alibi witness was not prejudicial since the witness had decided "for her own reasons" not to testify. Justice Agresta's order makes no such finding. The court's brief narrative reference to the defendant's contention that he had an alibi witness, and its recounting of the People's rebuttal, can in no sense be read as a "finding of fact" that defendant's alibi witness had decided not to appear for "reasons unrelated" to her availability to the defense. Though mindful of the Court of Appeals admonition that each case requires "a sensitive weighing process" *(People v Taranovich,* 37 NY2d 442, 445, *supra),* we nevertheless conclude that under the circumstances presented herein, the defendant has been deprived of his constitutional right to a speedy trial. Lazer, J. P., Mangano, Lawrence and Kooper, JJ., concur.